MARVIN GERALD TAYLOR

v.

COMMONWEALTH OF VIRGINIA

No. 1598-85

Decided March 17, 1987

COUNSEL

Michael J. Barbour (Gilmer, Sadler, Ingram, Sutherland & Hutton, P.C., on brief), for appellant.

Margaret Poles Spencer, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**COLEMAN, J.** — Marvin Gerald Taylor was convicted by a jury of robbery and use of a firearm in the commission of robbery for which he received penitentiary sentences of twenty years and one year, respectively. He contends the convictions should be reversed because the Commonwealth violated his due process rights when it was unable to produce certain items of evidence pursuant to a discovery request and because he was deprived of his statutory and constitutional rights to a speedy trial. We find that Taylor was neither denied due process of law nor deprived of a speedy trial, and we affirm the convictions.

In 1978, the First and Merchants Bank (hereafter F & M) in Radford, Virginia was robbed. Shortly after the robbery, the FBI recovered a sawed off shotgun and clothing believed to have been worn by the robber. No arrest was made at the time.

In 1984, while incarcerated on other charges, Taylor was interviewed by FBI Agent Patrick J. Rutzinski and Pulaski County Investigator Tom Bentley. Taylor told them he was using drugs at the time of the 1978 robbery but he "believed" and "felt" that he committed the F & M robbery in Radford six years earlier. Taylor said he had a shotgun and wore a blue parka with a hood. He said that he had no money before the robbery but had a lot of money afterwards. Subsequently, Taylor denied involvement in the robbery. He agreed to a polygraph test and stipulated that the results would be admissible. His answers denying involvement in the robbery were "deceptive" and "untruthful." The admissibility of the polygraph results was not challenged in the trial court and is not before us on appeal.

Taylor was charged with the 1978 robbery at F & M. At the preliminary hearing in November 1984, probable cause was found to certify the charges to a grand jury. In February 1985, the grand jury returned a "no true bill" and in March 1985, the Commonwealth "nol prossed" the charges. On May 21, 1985, during the next grand jury term, Taylor was indicted.

On September 18, 1985, in response to a discovery request and order, the Commonwealth revealed that the clothes found in 1978 which were allegedly worn during the robbery had been lost or misplaced by the police. As a consequence, the trial court ruled that the Commonwealth could not present any evidence in connection with the lost articles, but the defendant could present favorable evidence about the missing items. Taylor filed a motion to dismiss the indictments, asserting that because the Commonwealth had "lost, misplaced or maybe destroyed" the clothing, he was denied "the right to inspect relevant physical evidence to determine whether or not it may be exculpatory." He contends that being deprived of potentially exculpatory evidence denied him due process of law.

At a pretrial hearing on the issue, Agent Rutzinski testified that the clothing had been in the FBI's possession from the time it was found in 1978 until October 16, 1984, when he turned it over to

Investigator Bentley of the Pulaski County Sheriff's Department. Investigator Bentley gave Agent Rutzinski a receipt for the evidence and placed the items in the trunk of his car. Investigator Bentley testified he had no specific recollection about the evidence after that, although he thought he had placed the evidence in a particular storage bin in the evidence room at the sheriff's department. However, when he went back to that bin, it was empty and the log sheet contained no indication that the evidence had ever been stored there. Investigator Bentley stated that he had always followed proper procedure in handling evidence. He testified that to his knowledge it had not been destroyed; he simply had no explanation for its whereabouts.

The trial court ruled that there was no negligence which would require dismissal of the charges. Taylor requested and was granted a continuance from the trial date of September 26, 1985, until October 10, 1985.

On October 9, the Commonwealth informed Taylor that during the 1978 investigation it had received information that the bank manager's wife had heard from a friend that the friend's boyfriend had stated he was going to rob something, "possibly a bank." The FBI had located the boyfriend and he had an alibi which the FBI investigated and concluded was valid. In light of this newly disclosed information, Taylor requested another continuance. The court concluded that the Commonwealth had done nothing wrong in failing to reveal the information earlier and that the information probably was not exculpatory; however, to avoid any question the court granted a continuance until November 20, 1985, when Taylor was tried and convicted.

## I. Missing Evidence

The suppression of exculpatory evidence by the government violates due process if the evidence is material to either guilt or punishment, *Brady v. Maryland*, 373 U.S. 83, 87 (1963), but the government's failure to preserve relevant admissible evidence does not necessarily give rise to a due process violation. *California v. Trombetta*, 467 U.S. 479 (1984). The Supreme Court found that the duty the constitution imposes on the state to preserve evidence is "limited to evidence that might be expected to play a significant role in the suspect's defense." *Id.* at 488. To play a

significant role in the defendant's case, the exculpatory nature and value of the evidence must have been apparent before the evidence was destroyed, and been of such a nature that the defendant could not obtain comparable evidence by other reasonable means. *Id.* at 489. In deciding whether the destruction of evidence constituted a due process denial, the Supreme Court also considered whether the government agents had acted in good faith and in accord with their normal practice and had not made a conscious effort to suppress exculpatory evidence. *Id.* at 488.

Taylor argues that when the facts of his case are viewed in light of the *Trombetta* principles, the charges against him should have been dismissed. He argues that the evidence had apparent exculpatory value before it was lost, and that due to its unique nature, he could not obtain comparable evidence. However, Taylor's assertions are not supported by the facts. The only potentially exculpatory aspect of the evidence raised was the size of the missing coat. The coat was a man's size "tall." Taylor stood only 5'7" tall. Even though Taylor asserts the importance of the coat and its size, he failed to make any mention of it to the jury. Under the court's ruling, he could have established the coat's size. In fact, he did not mention the missing evidence at all during the trial. Taylor's argument that the missing evidence *might* have had exculpatory value is purely speculation and conjecture. Whether or not the clothes fit Taylor goes to the weight and sufficiency of the government's case against Taylor rather than to the evidence's exculpatory value. *See United States v. Martinez,* 744 F.2d 76, 80 (10th Cir. 1984). Furthermore, a receipt describing the missing items, including the size of the coat, was available and would have been a means by which the size of the coat could have been made known to the jury. Taylor's failure to mention the missing evidence at trial undermines his contention that the evidence would have played a significant role in his defense. The record fails to show that the missing evidence was material and that its unavailability was thereby prejudicial to Taylor.

The last factor to consider in the access-to-evidence issue is the nature and effect of the government action which led to the unavailability of the evidence. Paraphrasing *Trombetta,* Taylor describes the state's action as follows: "It certainly cannot be said that Investigator Bentley acted 'in good faith and in accord with normal practices.' " Taylor correctly observes that losing or mis-

placing evidence would not be standard procedure for the Pulaski Sheriff's Department. In *Trombetta* the court was dealing with evidence which was intentionally destroyed in compliance with normal police practice and the proper inquiry was whether it was destroyed in good faith. In the present case the evidence was mistakenly misplaced or inexplicably lost, so the more appropriate inquiry is whether the government acted in bad faith. *See Cody v. Solem*, 755 F.2d 1323, 1331 (8th Cir.), *cert. denied*, 474 U.S. 833 (1985). Investigator Bentley could not explain what happened to the evidence except to say that it was inadvertently lost prior to trial. Bentley testified that he did everything possible to locate the evidence. The trial court found that the evidence of negligence on his part was insufficient to require dismissal of the charges. We agree. There was no evidence that the loss of the evidence was the result of bad faith or misconduct by the government. In *Cody*, evidence also was unexplainably lost prior to trial and the defendant made unsubstantiated allegations of impropriety. The court stated: "[W]hile we are hesitant to simply accept the State at its word, we are also unwilling to infer that the state acted in bad faith on the basis of what has been presented." *Id.* at 1332. Likewise, we do not condone the loss of evidence, but we see nothing to support a finding of bad faith based on the facts before us.

Accordingly, because the record fails to establish that the missing evidence was material to Taylor's defense or that the state intentionally suppressed discoverable evidence, Taylor's constitutional right to due process was not violated.

## II. Speedy Trial

Taylor alleges that his right to a speedy trial as guaranteed by the United States and Virginia Constitutions and as codified in Code § 19.2-243 was violated.

Taylor argues that the Commonwealth sought to circumvent Code § 19.2-243 by "nol prossing" the original identical charge, an action which amounted to a denial of due process. Nothing in the record suggests that the Commonwealth abused the grand jury process or that the Commonwealth requested the *nolle prosequi* for improper motives. Absent a showing that the Commonwealth acted improperly, Taylor's due process claim must fail. *See Presley v. Commonwealth*, 2 Va. App. 348, 351, 344 S.E.2d 195,

196 (1986).

■ Taylor asserts that the time limit for a speedy trial should be measured from the first finding of probable cause in November 1984. This court recently rejected a similar assertion in *Presley*. On facts strikingly similar to this case, the court in *Presley* found that once a grand jury returns a "no true bill" the accused is discharged from the charge in question. *Id.* at 351, 344 S.E.2d at 196. Just as in *Presley*, if Taylor had not already been incarcerated on other charges, he would have been a free man once the "no true bill" was returned. Accordingly, Taylor's speedy trial right began on the date of the second indictment in May 1985.

■ Taylor argues that even if the May 1985 indictment began the running of the prosecutorial bar of Code § 19.2-243, his right to a speedy trial was nevertheless denied. He was continuously confined after his arrest in 1984 until he was ultimately tried on November 20, 1985. Code § 19.2-243 provides that if the accused is continuously incarcerated, he must be tried within five months of a finding of probable cause. However, Code § 19.2-243 contains several exceptions to the five month limitation including a provision that the period of time resulting from continuances granted on the motion of, or with the concurrence of, the accused shall not be counted. Taylor's case was first scheduled for trial on September 26, 1985, a date well within five months of the May 1985 finding of probable cause. Although the two continuances were requested by Taylor, he asserts nevertheless that they should be attributed to the Commonwealth. The first continuance was granted when the Commonwealth discovered that evidence was lost or missing; the second continuance was granted when the Commonwealth advised Taylor of information from the bank manager's wife which he wanted to investigate. Absent a showing of bad faith on the part of the Commonwealth, we are unwilling to impute the continuances to the Commonwealth. The evidence does not support a finding of bad faith. The defendant requested and was granted the continuances; consequently, the delay under the statute is attributed to him. Excluding the time allowed for the continuances, the trial was held within the time prescribed by Code § 19.2-243. Accordingly, there was no statutory or constitutional denial to Taylor of his right to a speedy trial.

For the reasons stated, the conviction is affirmed.

*Affirmed.*

Cole, J., and Moon, J., concurred.