## Norfolk

## DARRYL EUGENE FOSTER

v.

## COMMONWEALTH OF VIRGINIA

No. 0679-87-1

Decided May 2, 1989

COUNSEL

John W. Drescher (Mark S. Smith; Breit, Drescher & Breit; Lyle, Siegel, Croshaw & Beale, on brief), for appellant.

Linwood T. Wells, Jr., Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

COLE, J.—Darryl Eugene Foster was convicted of first degree murder, robbery and use of a firearm in commission of a felony. On appeal, Foster contends that (1) he was denied his right to a speedy trial under Code § 19.2-243, and (2) the trial court erred in refusing to suppress an inculpatory statement he made after invoking his right to counsel. Finding no merit in either argument, we affirm.

On November 12, 1985, Foster was arrested by Virginia Beach police after a foot chase during which he dropped a gun. At the police station, he was advised of his *Miranda* rights. Foster initialed each right on a standard form listing the rights and signed the form. Foster then agreed to speak with Detective T. A. Baum.

Shortly after the interview began, Foster asked whether he could have his lawyer present. According to the notes of another detective who was present, the following exchange took place:

BAUM: You want your lawyer here?
FOSTER: I want to talk about these things, but still I'll (sic) like him to be here. You'll get full cooperation. His name is Bruce Sams.

\*     \*     \*

BAUM: Do you want me to call him?
FOSTER: Yes. I know some things that I've been charged in, some people been doing things and they say I did it. I'll (sic) like to know what I'm being charged with and I'll admit to it if I did it.
BAUM: I'll call your lawyer if you want.
FOSTER: I'll still be talking 'cause some of the people that have been doing these things (sic). I would like to know everything that's been charged and I want him to be here. He ain't going to tell me to stop talking.

Foster once more repeated his request that the attorney be called. Baum telephoned Sams' office and home but was unable to reach him. When Baum told Foster this, Foster asked what the charges against him were.

BAUM: No sense beating around the bush. You know the gun that was discovered next to your hat was taken from a burglary here in Norfolk and ballistics have shown that your prints are on it.[1] That gun was used in a homicide in Virginia Beach. If that happened during a robbery, it means the electric chair.
FOSTER: Just read the charges.

After more conversation, Foster asked Baum to try again to reach the attorney. Baum let Foster make the calls himself, but the attorney could not be reached. They returned to the interview room.

BAUM: Do you want to talk about it or not? It's up to you whether you want an attorney here or not. You do not have to talk about anything you do not want to.
FOSTER Okay, but I'm not telling names.

Baum asked if Foster wanted to try another lawyer, and Foster replied that he did not. Foster then made a statement which inculpated him to the extent he admitted possessing the gun.[2]

The charges against Foster were certified to the grand jury after a preliminary hearing in district court on February 14, 1986. The grand jury returned indictments against Foster on March 3, 1986.

The trial, originally scheduled for April 22, 1986, was continued three times on motion of the defendant. On November 24, 1986, a fourth continuance was granted at the request of defense counsel and over the objection of the Commonwealth. The record

---

[1]  This statement was false. No tests for fingerprints had been done on the gun. Baum admitted in testimony that he knew the statement was not true.

[2]  Foster stated that he had had possession of the gun for about four days before his arrest. He said a person named Robert had given him the gun, and that Robert had been "loaning" the gun out to people.

reflects three purposes for the continuance. The first was to allow the defense to investigate an alleged payment of money by the family of the victim to a witness for the Commonwealth. Defense counsel had learned of the allegation when he interviewed the witness on November 18. The second purpose was to let defense counsel review letters written by the defendant which the Commonwealth had obtained for hand-writing analysis in late October. The letters had been given to defense counsel on November 22, although the Commonwealth stated in court that they contained no information relative to the crimes. The third purpose for the continuance was to allow the defense to listen to a tape of an October 14 interview of the defendant's girlfriend by Detective Baum. The Commonwealth asserted that the tape contained no information which defense did not already have in its possession.

On January 22, 1987, a jury was impaneled, the appellant was arraigned and the trial was adjourned until January 26. On that date, defense counsel moved for a mistrial on the ground that exculpatory evidence had not been properly disclosed by the Commonwealth.[3] The Commonwealth concurred, and a mistrial without prejudice was declared.

A new trial of Foster convened on March 23, 1987. The appellant moved to dismiss the indictments against him on the ground that the Commonwealth had failed to bring him to trial within the five month period required by Code § 19.2-243. The motion was denied. Later in the trial, a defense motion to suppress Foster's statement to Detective Baum also was denied, and Baum read the statement into evidence.

## I.

The appellant's first assignment of error is the trial court's denial of his motion to dismiss the indictments for violation of his statutory right to a speedy trial. Code § 19.2-243 provides:

---

[3] The assistant Commonwealth's attorney who was trying the case said that in a meeting with defense counsel on January 26: "We gained some insight into what the defense theory of the case was. Knowing what their theory of the case was and what their strategy was going to be, we went back and reviewed our file, and a great deal of material that was not exculpatory before became either potentially exculpatory or potentially available for impeachment purposes." This material was provided to the defense.

Where a general district court has found that there is probable cause to believe that the accused has committed a felony, the accused, if he is held continuously in custody thereafter, shall be forever discharged from prosecution for such offense if there be no trial commenced in the circuit court within five months from the date such probable cause was found. . . .

The statute lists five circumstances under which the failure to bring a defendant to trial within the prescribed period is excused. The most relevant of these for our purposes is a "continuance granted on the motion of the accused, or by his concurrence in such a motion by attorney for the Commonwealth. . . ."

The trial which led to Foster's convictions began on March 23, 1987, more than thirteen months after the preliminary hearing, at which probable cause was found. Each of the four continuances in this case were either requested or concurred in by the appellant, and the mistrial was declared on a defense motion. The appellant, however, argues that the November 24, 1986, continuance and the January 26, 1987, mistrial were necessitated by the Commonwealth's failure to disclose exculpatory evidence, and that the 185 days of delay after November 24 should be charged to the Commonwealth.

In *Taylor v. Commonwealth*, 4 Va. App. 45, 354 S.E.2d 74 (1987), we said that a showing of bad faith on the part of the Commonwealth would be required before we imputed to it continuances requested by the defense. *Id.* at 51, 354 S.E.2d at 78. Reviewing the record before us, we find no evidence that the Commonwealth acted in bad faith relative to the November 24 continuance. Thus, all four continuances are chargeable to the appellant.

We assume without deciding that the delay resulting from the mistrial is not attributable to the appellant because a motion for mistrial does not fit within any of the five exceptions stated in Code § 19.2-243. Adding these fifty-seven days to the sixty-eight days between the preliminary hearing and the first continuance, the resulting delay imputed to the Commonwealth is only 125 days, clearly within the statutory limit of 152 days. Accordingly, we agree with the trial court that Foster's statutory right to a speedy trial was not violated.

## II.

■ Foster next argues that admission at trial of the statement he made to police after requesting that his attorney be called violated his rights under the fifth, sixth and fourteenth amendments. An accused has a right to have counsel present during a custodial interrogation. *Correll v. Commonwealth*, 232 Va. 454, 462, 352 S.E.2d 352, 357 (1987)(*citing Edwards v. Arizona*, 451 U.S. 477, 482 (1981)). "[H]aving expressed his desire to deal with the police only through counsel, [the accused] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484-85.

The record indicates that Foster's initial intention was to waive his right to remain silent but to exercise his right to the presence of counsel. Foster's words make it clear that he was determined to talk to the police no matter what his attorney advised. Apparently, there were some matters Foster believed he could clear up with explanations. The attorney "ain't going to tell me to stop talking," he stated.

■ Since Foster invoked his right to counsel, however, he must subsequently have made a valid waiver of the right for his statement to have been admissible. *Edwards* set out a two-part test for determining validity of a waiver. First, the suspect himself must have initiated "further communications, exchanges or conversations with the police." *Edwards*, 451 U.S. at 485. The second inquiry is "whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances." *Id.* at 486 n.9; *see also Oregon v. Bradshaw*, 462 U.S. 1039, 1045-46 (1983). This determination hinges on "the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused." *North Carolina v. Butler*, 441 U.S. 369, 374-75 (1979)(quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). "[A]ny evidence that the accused was threatened, tricked or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege." *Miranda v. Arizona*, 384 U.S. 436, 476 (1965).

Based on the record, we believe Foster was the initiator of the conversation that led to his statement. After Foster requested counsel, he continued talking with the detectives in an effort to locate the attorney. At the same time, he kept asserting his intent to talk about the charges against him. His words "evinced a willingness and a desire for a generalized discussion about the investigation." *Bradshaw*, 462 U.S. at 1045-46; *see Connecticut v. Barrett*, 479 U.S. 523, 529 (1987)("*Miranda* gives the defendant a right to choose between speech and silence, and Barrett chose to speak").

■ When Baum asked, "Do you want to talk about it or not?", Baum merely continued an exchange which Foster had initiated earlier and kept alive throughout the search for his attorney. "[P]olice do not impermissibly 'initiate' renewed interrogation by engaging in routine conversations with suspects about unrelated matters. And police legitimately may inquire whether a suspect has changed his mind about speaking to them without an attorney." *Edwards*, 451 U.S. at 490 (Powell, J., concurring).

We also find that Foster's waivers of both his right to remain silent and his right to counsel were knowing and intelligent under the totality of the circumstances. *Edwards*, 451 U.S. at 486 n.9. The record shows Foster was advised of his *Miranda* rights, initialling each on a standard form and signing the form. Baum again reminded Foster of these rights just before he made the statement and there is no indication that Foster did not understand them.

■ Baum's false representation that Foster's fingerprints were on the gun, while perhaps ethically improper, did not, in our view, vitiate the voluntariness of Foster's waivers. Foster already had indicated his intention to speak to police. Baum did not misrepresent the existence or nature of Foster's constitutional rights; he simply misrepresented one aspect of the factual strength of the case against Foster. Consistent with the view expressed in similar cases, we conclude that *Miranda's* prohibition against threats, trickery or cajolery was not intended to preclude in all circumstances trickery concerning merely one aspect of the factual strength of the case against the accused. *See Commonwealth v. Forde*, 392 Mass. 453, 466 N.E.2d 510 (1984); *People v. Martin*, 102 Ill. 412, 466 N.E.2d 228 (1984). Moreover, Foster's reaction indicates the remark made little impression on him. Nothing

about the misrepresentation impeded Foster's "ability to understand the nature of his rights and the consequences of abandoning them." *Moran v. Burbine*, 475 U.S. 412, 424 (1986); *see Colorado v. Spring*, 479 U.S. 564, 575-77 (1987). We do not condone Baum's conduct. Under different circumstances, we would not hesitate to find that police misrepresentations concerning the strength of the case against the accused undermined the accused's free will. In this case, however, we find that the totality of circumstances supports the finding of a knowing and intelligent waiver. We are satisfied that Foster was not impermissibly threatened, tricked, or cajoled into his waivers.

We hold that the trial court properly admitted Foster's statement because he had made valid waivers of his right to remain silent and his right to counsel. Accordingly, the judgment is affirmed.

*Affirmed.*

Hodges, J., and Moon, J., concurred.