## CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

v.

Jesse Biliter

### June 19, 1992

### Case No. (Criminal) 74888

BY JUDGE THOMAS S. KENNY

The defendant in this case has moved to suppress a confession he made to Investigator Kelly Gregory of the Fairfax County Police Department. The statement was made after Biliter had been arrested and counsel had been appointed for him, but before he had talked to counsel. Because I find that (i) defendant initiated the conversation with Gregory, but (ii) the Commonwealth failed to establish that, under the totality of the circumstances, there was a knowing and intelligent waiver of the defendant's right to counsel, I grant the motion to suppress.

"The Commonwealth has the burden of establishing by a preponderance of the evidence that a statement by an accused admitting his participation in criminal activity or implicating himself was freely and voluntarily made." *Wilson v. Commonwealth*, 13 Va. App. 549, 551 (1992). At the hearing on the motion to suppress, the Commonwealth offered evidence on which I make the following findings of fact.

On February 3, 1992, defendant was arrested by Gregory on a charge of distributing narcotics to a minor and was read his *Miranda* rights from a preprinted card. Within the next two days, he was released on bond, and counsel was appointed for him by the Juvenile Court, but he was apparently not aware of the identity of his counsel. On February 5, Biliter called Investigator Gregory and asked her if she knew who had been appointed to represent him. Gregory said she

did not know but would be glad to call Juvenile Court and find out for him. She called the Court, learned that Mr. Ishee had been appointed, and called Biliter back with that information. Biliter was at his own home at the time of this second conversation and was obviously not in a custodial situation.

After Gregory provided the information about Mr. Ishee's identity, Biliter then asked her what would happen now in the case. She replied that he would have to take that up with Mr. Ishee and suggested that he call his lawyer. Biliter persisted by asking, "What would happen if I pled guilty?"[1] To this inquiry, Gregory responded, "What are you telling me, that you *are* guilty?" To that question, Biliter answered, "Yes, I'm guilty. I made a stupid mistake." It is this admission that defendant now seeks to suppress.

In *Michigan v. Jackson*, 475 U.S. 625, 636, 106 S. Ct. 1404, 1411 (1986), the Supreme Court announced the clear rule that a waiver of a defendant's right to counsel is always invalid *in a police-initiated interrogation* after the defendant has asserted that right to counsel at an arraignment or similar proceeding. On the other hand, if the *defendant* has initiated the conversation, then a waiver will be valid if and only if it is knowing and intelligent under all the circumstances of the case. *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S. Ct. 2830 (1983). The "knowing and intelligent waiver" test was established by *Johnson v. Zerbst*, 304 U.S. 458, 58 S. Ct. 1019 (1938), and reinforced by *Edwards v. Arizona*, 451 U.S. 477, 101 S. Ct. 1880 (1981).[2]

In this case, I find that the defendant in fact initiated the conversation with Investigator Gregory. In *Bradshaw*, the defendant had in-

---

[1] Each of the quoted statements herein is taken from the court's notes of Ms. Gregory's testimony, and may not be *verbatim* renderings of what she said on the stand. In case of conflict between my notes and the official transcript, which had not been prepared at the time this opinion is written, the transcript will of course be more reliable. However, I believe that my notes accurately reflect the substance of the conversation testified to by Investigator Gregory. The defendant did not testify at the hearing.

[2] *Bradshaw* involved the defendant's Fifth Amendment right to counsel, whereas Biliter claims that it was his Sixth Amendment right that has been violated. Under the circumstances of this case, where the defendant initiated the conversation and was not in custody, I believe the distinction has no difference. *Jackson* made it clear that the rationale of the *Edwards* line of Fifth Amendment cases, of which *Bradshaw* is one, applies with equal force to the Sixth Amendment. 475 U.S. at 636, 106 S. Ct. at 1411.

quired of the police who took him from the station and placed him in a patrol car, "Well, what is going to happen to me now?" The court ruled that there could be "no doubt" that in doing so he initiated a generalized discussion about the investigation.[3] In the case at hand, however, there really can be no doubt: the defendant telephoned the detective from his home, initiated the subject of future progress in the case, was put off by the detective, and persisted in the discussion by inquiring about pleading guilty.

However, the second part of the test is whether the defendant has "knowingly and intelligently" waived his right to counsel. As mentioned earlier, this test was established in the 1938 case of *Johnson v. Zerbst, supra*:

> The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused . . . This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record.

*Id.* at 464–65, 58 S. Ct. at 1023.

Here, the Commonwealth did not introduce any evidence about the "background, experience and conduct of the accused." It did put on evidence that two days before the conversation with Gregory, Biliter had been read his *Miranda* rights while he was still in custody. There was also evidence that Gregory told Biliter immediately before the incriminating exchange that he should speak to his lawyer about the future progress of the case. And it also appeared from the evidence that Biliter had not yet spoken to Mr. Ishee, his appointed counsel, at all about the case.

There was no evidence about the state of mind of the defendant, whether he sounded to Gregory like he was under the influence of any drug or alcohol, whether he had acknowledged understanding

---

[3] Apparently, there was *some* doubt. The court split 5–4 on this question!

the *Miranda* rights that were read to him several days before, or whether the defendant had had any prior experience with law enforcement officers or the criminal justice system.

Without a fuller development of the facts, it is not possible to determine whether Investigator Gregory's question about the defendant's guilt was an impermissible "knowing exploitation by the State of an opportunity to confront the accused without counsel being present," *Maine v. Moulton*, 474 U.S. 159, 176, 106 S. Ct. 477, 487 (1985), or a legitimate interrogation by the police after the right to counsel had been knowingly and intelligently waived, *Oregon v. Bradshaw*, *supra*.

The Commonwealth calls my attention to *Foster v. Commonwealth*, 8 Va. App. 167 (1989), in which the defendant, immediately after his arrest and while he was still in custody, executed a written acknowledgement of his *Miranda* rights and asked for a specific attorney to be present. After several unsuccessful attempts to reach that attorney, during which Foster repeatedly assured the detectives that he wanted to talk and would not listen to an attorney's advice to stop talking, the detective said "Do you want to talk about it or not? It's up to you whether you want an attorney here or not . . ." Foster then said "Okay, but I'm not telling names." Even after that, the detective offered him the opportunity to get another lawyer before Foster talked, but Foster declined. The Court of Appeals rightly, I believe, concluded that there had been a knowing and intelligent waiver of Foster's right to counsel.

This case is different from *Foster*. Foster apparently had experience with the criminal justice system, not only knowing what lawyer he wanted to call, but also what the lawyer was likely to tell him about talking; there is no evidence here to support a similar conclusion about Biliter. Foster's detective approached the subject of talking without counsel very cautiously, even repeating an offer of counsel after Foster had initially agreed to talk without one; here Investigator Gregory simply plunged ahead with the ultimate question at the first opportunity, and never asked Biliter if he wished to talk with her without counsel. Finally, Foster had very recently executed a written acknowledgement of his *Miranda* rights; Biliter had had those rights read to him two days before.

For the foregoing reasons, the motion to suppress the defendant's admission of guilt in response to the detective's direct inquiry is

granted. The same considerations, however, do not apply to the defendant's question of Gregory, "What would happen if I pled guilty?" That was simply a request for information, similar to his immediately preceding request for information about the future progress of the case. It neither admits nor denies guilt, and more significantly, was not elicited as a response to any inquiry or prompting by Gregory, directly or indirectly. To the extent that the trial judge rules that his question about pleading guilty has relevance, the Commonwealth will not be precluded from offering it as part of Investigator Gregory's testimony.