UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Chafin and Senior Judge Clements
Argued by teleconference


COMMONWEALTH OF VIRGINIA

v.       Record No. 0131-18-3

CALVIN WAYNE CRAIGHEAD

MEMORANDUM OPINION* BY
JUDGE ROBERT J. HUMPHREYS
JUNE 12, 2018


FROM THE CIRCUIT COURT OF FRANKLIN COUNTY
William N. Alexander, II, Judge Designate[1]

Victoria Johnson, Assistant Attorney General (Mark R. Herring,
Attorney General, on briefs), for appellant.

Clifford F. Hapgood for appellee.


Appellee Calvin Wayne Craighead ("Craighead") was indicted on June 6, 2016, in the

Circuit Court of Franklin County (the "circuit court"), for two counts of distributing a Schedule

II controlled substance, third or subsequent offense, in violation of Code § 18.2-248(C). On

August 25, 2017, Craighead filed a motion to dismiss the indictments against him asserting that

he was denied his statutory right to a speedy trial. On September 11, 2017, Craighead moved to

amend two continuance orders previously entered by the circuit court. After a hearing and by

order dated October 11, 2017, the circuit court corrected the continuance orders of February 27,

2017 and June 1, 2017. Thereafter, on January 11, 2018, the circuit court dismissed the two

indictments against Craighead for the failure of the Commonwealth to provide Craighead a

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Although Judge Alexander presided over the last hearing and issued the final order in
this case, the record reflects that Judge Clyde H. Perdue, Jr. presided over the hearings resulting
in the continuances that are the subject of this appeal.

speedy trial as defined by Code § 19.2-243. The Commonwealth filed an interlocutory appeal of

this decision pursuant to Code § 19.2-398(A)(1), arguing that the circuit court erred as follows:

> I. Because the Circuit Court continued two trial dates due to
> defense counsel not being present (along with his client,
> who was present) on those two scheduled trial dates, it was
> error to count delays triggered by those continuances
> against the Commonwealth for statutory Speedy Trial
> purposes under [Code] § 19.2-243, and therefore it was
> error to rule that statutory Speedy Trial [sic] had expired.

> II. The Circuit Court failed to allow the Commonwealth to
> introduce evidence (either in person or via an email) from
> the Circuit Court's scheduling Administrative Assistant,
> demonstrating what steps said Assistant took regarding the
> first of the two aforementioned continuances, and
> elaborating why defense counsel did not appear on that trial
> date.

## I. BACKGROUND

On June 6, 2016, a Franklin County grand jury indicted Craighead for two counts of

distribution of cocaine, third or subsequent offense. Finding Craighead to be indigent, the circuit

court appointed Robert L. Deatherage ("Deatherage") to represent Craighead. Craighead was

released from custody on July 11, 2016, with a jury trial scheduled for October 13, 2016.

On October 13, 2016, the first scheduled trial date, Craighead and Deatherage appeared

before the circuit court. When the case was called, Deatherage, on behalf of Craighead, moved

to continue the trial date to permit him time to review discovery provided by the Commonwealth.

When the circuit court asked Craighead if "[i]t will be continued at the defendant's request[,]"

Deatherage replied, "[y]es, sir. And we certainly waive speedy trial or any other thing that we

need to." On October 27, 2016, the circuit court entered an order which continued the case upon

Craighead's motion until December 19, 2016.

On December 19, 2016, the second scheduled trial date, the Commonwealth moved to

continue the trial because it could not locate an "elusive" material witness—the confidential

informant. The circuit court granted the Commonwealth's motion over Craighead's objection and entered an order continuing the case upon the Commonwealth's motion until February 21, 2017.

On February 21, 2017, the third scheduled trial date, Craighead appeared in the circuit court. Deatherage, however, did not appear. The prosecutor proffered to the circuit court that "something has come up with regard to [Deatherage] so we are going to have to have a different date and time, at the request of [Craighead]. I want to get that part on the record." The prosecutor told the circuit court that it was unable to contact Deatherage to set a new trial date, and asked that the circuit court "have [Craighead] sign to be back on a certain day." The record does not reflect that the circuit court made any inquiry into Deatherage's failure to appear to represent Craighead.

The circuit court asked Craighead if he understood the situation. Although Craighead informed the circuit court that he was unable to contact Deatherage and expressed concern that he was missing work to attend court, Craighead neither objected nor consented to the continuance. The circuit court then instructed Craighead to contact Deatherage's office and make an appointment. The circuit court also explained that continuing the trial until April 18, 2017, should be "far enough that things will be fine, to give you enough time to speak with Mr. Deatherage. If it's not, Mr. Deatherage can contact the court and let us know what problems you all have and we'll take that matter up then." The circuit court tentatively set the trial date for April 18, 2017, but acknowledged that none of the parties could contact Deatherage regarding the April 18, 2017 trial date. The circuit court memorialized its action in an order dated

February 27, 2017, which stated that the trial was continued "upon motion of the defendant" until April 18, 2017.[2]

After the circuit court continued the trial date, the prosecutor advised the circuit court that the confidential informant failed to appear for the second time and requested that the circuit court issue a *capias* for his arrest. The circuit court issued the *capias*.

The parties next appeared before the circuit court on May 25, 2017—the fifth scheduled trial date. While Craighead appeared, Deatherage again did not. The prosecutor advised the circuit court that it had received an email that morning from Deatherage "indicating that he would be going to the hospital . . . [and] would not be able to make it to court." In response to an inquiry from the circuit court, the prosecutor stated that it "would be appropriate to continue the matter, [which would] obviously not count towards speedy trial given these circumstances[.]" The circuit court then addressed Craighead stating, "I personally don't think it's fair for you to go forward without an attorney under these charges specifically." On June 1, 2017, the circuit court entered an order stating that the case was continued "[u]pon motion of the defendant" until June 8, 2018.

After the circuit court granted the continuance, the prosecutor advised the circuit court that the confidential informant had also failed to appear for the third time. Upon the prosecutor's request, the circuit court issued a second *capias* for the confidential informant.[3]

On June 8, 2017, Craighead advised the circuit court that he planned to retain counsel to represent him. The circuit court continued the case and, on June 15, 2017, Craighead requested

---

[2] The circuit court order granting Craighead's speedy trial motion states, "On March 9, 2017, the April 18, 2017, trial date was continued by the Court to May 25, 2017. There is nothing in the Record where the Court or any sworn witness explained why the hearing scheduled for April 18, 2017 was continued until May 25, 2017."

[3] The record does not reflect how the first *capias* for this witness was disposed of.

that the circuit court appoint a new attorney for him. On June 26, 2017, the circuit court appointed new counsel for Craighead—his current counsel—and the parties agreed to set the case for a jury trial on September 14, 2017.

On August 25, 2017, Craighead filed a motion to dismiss on statutory speedy trial grounds and, on September 11, 2017, a motion to amend the circuit court's continuance orders. The Commonwealth filed a motion in opposition to Craighead's motion to dismiss, and, on October 5, 2017, the circuit court held a hearing.

During the motions hearing, the parties agreed that a total of 184 days—the time from Craighead's arrest until the first trial date, June 17, 2016 through October 13, 2016, as well as the continuance from December 19, 2016 through February 21, 2017—was chargeable to the Commonwealth for speedy trial purposes pursuant to Code § 19.2-243. The parties also agreed that a total of sixty-eight days—the continuance from October 13, 2016 to December 19, 2017— was chargeable to Craighead.[4] However, the parties did not agree on the attribution of the ninety-three days from February 21, 2017 to May 25, 2017, resulting from the failure of Deatherage to appear.

The prosecutor argued that the disputed days were chargeable to Craighead because, even though Deatherage was not present at trial, Craighead was present and failed to object to the continuances. The Commonwealth also attempted to introduce a March 9, 2017 email from the circuit court's scheduling assistant that the prosecutor proffered could provide "some context as to what happened on February [21, 2017]." Craighead, however, objected to the email as hearsay. While the prosecutor offered to call the scheduling assistant to "validate her email[,]" the circuit court refused to permit that and stated that it limited its review of the speedy trial issue

---

[4] The circuit court's January 10, 2018 final order indicates that this period is sixty-seven days, not sixty-eight days. However, sixty-eight days is the correct calculation.

to the existing record. When the Commonwealth attempted to admit the email a second time, the circuit court determined that the email was hearsay, marked it as a tendered exhibit for the Commonwealth, and refused to admit it.

After discussing the situation at length and hearing arguments of counsel, the circuit court concluded that, with the exception of the sixty-eight-day continuance requested by the defendant to review evidence provided by the Commonwealth, the entirety of the remaining time delaying the commencement of Craighead's trial was chargeable to the Commonwealth for the purposes of Code § 19.2-243. According to the circuit court, "in looking at the statute, there is no way, I think, that I could find, and I will not find, that Mr. Craighead concurred in the continuance. He just did not do it. And he did not have his lawyer there." The circuit court also noted the reason for Deatherage's absences, which, although unknown to others, apparently was known to the circuit court.[5] Craighead then asked the circuit court to correct the continuance orders from February 27, 2017 and June 1, 2017, which originally attributed the continuances to Craighead. Thereafter, the circuit court stated the Commonwealth had not requested the continuances and further found that the transcripts did not support the conclusion that Craighead moved for a continuance.

On October 11, 2017, the circuit court entered an order correcting the orders of February 27, 2017 and June 1, 2017 to reflect "that [Craighead] did not request a continuance on February

---

[5] Although not reflected in the circuit court's subsequent orders, the transcript reflects the circuit court's concern that Craighead was being denied due process by the absence of his counsel and, thus, should not have been required to proceed *pro se*. Referencing Deatherage's absences, the circuit court stated "in this situation I can't envision the defendant having to stand up and say, Judge, I object. My attorney is not here, I don't know what to do. I object. I don't want a continuance. I want to be tried today. I mean that's not going to happen . . . in Mr. Deatherage's case, he's an alcoholic and he was in the hospital. Why didn't somebody say that?"

21, 2017 and May 25, 2017 and that the continuance [sic] on said dates was upon motion of the Court."

On January 10, 2018, the circuit court entered an order dismissing the indictments. There, the circuit court concluded that in addition to the 184 days that the Commonwealth agreed was chargeable to it, the 107 days from February 21, 2017 until June 8, 2017, the date that Craighead sought to retain counsel, were attributable to the Commonwealth. As a result, the elapsed time the circuit court attributed to the Commonwealth totaled 291 days and the circuit court held that Craighead had been denied the speedy trial required by Code § 19.2-243 and dismissed both charges against Craighead. This appeal by the Commonwealth follows.

## II. ANALYSIS

### A. Standard of Review

The Commonwealth has a very limited right to an appeal in a criminal case. One circumstance that permits it to do so is when indictments are dismissed due to a violation of a defendant's right to a speedy trial. See Code § 19.2-398(A)(1)(i). "[T]he burden of demonstrating that a delay in commencing trial is excused under Code § 19.2-243 lies upon the Commonwealth." Brown v. Commonwealth, 57 Va. App. 381, 389, 702 S.E.2d 582, 586 (2010) (quoting Robinson v. Commonwealth, 28 Va. App. 148, 153, 502 S.E.2d 704, 706 (1998)). In reviewing a statutory speedy trial claim, "this Court will give deference to the trial court's findings of fact, but review the trial court's 'statutory interpretations and legal conclusions *de novo*.'" Id. at 390, 702 S.E.2d at 586 (quoting Sink v. Commonwealth, 28 Va. App. 655, 658, 507 S.E.2d 670, 671 (1998)).

### B. Statutory Speedy Trial

In its first assignment of error, the Commonwealth argues that the circuit court erred in holding that the February 21, 2017 and May 25, 2017 continuances entered upon the circuit

court's own motion were chargeable to the Commonwealth for speedy trial purposes and

subsequently dismissing the case pursuant to Code § 19.2-243. More specifically, by relying on

Code § 19.2-243(4), the Commonwealth argues that because the circuit court found that the

continuances were upon the circuit court's own motion, Craighead's failure to object was, at a

minimum, an acquiescence to the continuances. As a result, the Commonwealth argues that the

continuances tolled the deadline by which it was required to bring Craighead to trial.

Code § 19.2-243 provides statutory protection of a criminal defendant's right to a speedy

trial. It declares that a defendant who, like Craighead, has been arrested on outstanding

indictments but has not been held continuously in custody thereafter "shall be forever discharged

from prosecution therefor if no trial is commenced in the circuit court within nine months from"

the date of his arrest on the indictments.[6] See Code § 19.2-243. "The nine-month limitation

'translates to' at least 273 days." McCray v. Commonwealth, 44 Va. App. 334, 342, 605 S.E.2d

291, 294 (2004).

"Circumstances will arise, however, that require and justify delay in the prosecution of a

defendant." Howard v. Commonwealth, 281 Va. 455, 459, 706 S.E.2d 885, 887 (2011)

(referencing Stephens v. Commonwealth, 225 Va. 224, 231, 301 S.E.2d 22, 26 (1983)). As a

result, the deadline mandated by Code § 19.2-243 has "tolling provisions" which effectively

---

[6] Code § 19.2-243 states, in relevant part,

> Where a district court has found that there is probable cause to
> believe that an adult has committed a felony, the accused, if he is
> held continuously in custody thereafter, shall be forever discharged
> from prosecution for such offense if no trial is commenced in the
> circuit court within five months from the date such probable cause
> was found by the district court; and if the accused is not held in
> custody but has been recognized for his appearance in the circuit
> court to answer for such offense, he shall be forever discharged
> from prosecution therefor if no trial is commenced in the circuit
> court within nine months from the date such probable cause was
> found.

extend the date by which a trial must commence. In addition to other enumerated exceptions, the

requirements of Code § 19.2-243 do not apply to such period of time if the failure to try the

accused was caused

> 2. [b]y the witnesses for the Commonwealth being enticed or kept
> away, or *prevented from attending by sickness* or accident; [or]
>
> . . . .
>
> 4. [b]y continuance granted on the motion of the accused or his
> counsel, or by concurrence of the accused or his counsel in such a
> motion by the attorney for the Commonwealth, *or by the failure of
> the accused or his counsel to make a timely objection* to such a
> motion by the attorney for the Commonwealth[.]

Code § 19.2-243 (emphasis added). While the statute does not explicitly contemplate

continuances granted upon a circuit court's own motion, our Supreme Court has held that such

continuances are the equivalent of continuances sought by the Commonwealth. See Howard,

281 Va. at 461, 706 S.E.2d at 888 (referencing Stephens, 225 Va. at 230, 301 S.E.2d at 25).

The Commonwealth argues that our Supreme Court's additional holding in Howard v.

Commonwealth, is controlling here. In Howard, the parties agreed to a trial date within the

speedy trial time frame. See id. at 457, 706 S.E.2d at 886. The day before trial, the trial court

*sua sponte* entered an order continuing the trial date past the statutory speedy trial deadline. See

id. at 458, 706 S.E.2d at 886. However, because the defendant failed to object to the continuance

order, this Court concluded that the defendant's statutory speedy trial period was tolled, and

there was no speedy trial violation. See id. at 459, 706 S.E.2d at 887. Subsequently, the

Supreme Court affirmed this Court's holding that the defendant's failure to object to the

continuance initiated by the trial court tolled the statutory deadline. See id. at 460-61, 706

S.E.2d at 888.

However, in considering the Commonwealth's argument, we note one significant fact

that distinguishes this case from Howard. In Howard, although the Commonwealth moved for a

continuance due to the absence of two witnesses, the defendant's counsel was present in court and advised the court that he also was not prepared for trial because he had not received some requested discovery from the Commonwealth and did not object to the court's *sua sponte* continuance. See id. at 458, 706 S.E.2d at 886. Thus, while the underlying responsibility for the court-initiated continuance was the equivalent of a request for a continuance by the Commonwealth, it was the failure of the defendant's *counsel* to object that had the effect of tolling the deadline for the commencement of the defendant's trial. Unlike in Howard, Craighead's counsel—Deatherage—was *not* present to represent him and Craighead had not waived his right to counsel or otherwise indicated a desire to represent his own interests. We do not read either the text of Code § 19.2-243 or the holding of Howard to require criminal defendants to effectively waive their Sixth Amendment right to effective counsel and to step into the shoes of their attorney to make tactical decisions with legal consequences or otherwise assume the responsibility for conducting their own defense when their attorney is not present to do so.

Nevertheless, that does not end our analysis because whether to object or not to a continuance is a tactical trial decision that counsel for represented defendants are entitled to make and such decisions are binding on their clients. See Stockton v. Commonwealth, 227 Va. 124, 141, 314 S.E.2d 371, 382 (1984). Here, as in Howard, Craighead was represented by counsel. Also, as was the case in Howard, Craighead was not prepared for trial because his court-appointed counsel was absent and he had not waived his right to proceed without counsel. Finally, as in Howard, Craighead's counsel failed to object to the continuances due to his absence from the courtroom. Thus, the logic expressed in Howard suggests a similar result here.

Moreover, our Supreme Court has also held that "the exceptions stated in the statute are not meant to be all-inclusive, and other exceptions *of a similar nature* are to be implied."

Wallace v. Commonwealth, 65 Va. App. 80, 93, 774 S.E.2d 482, 488 (2015) (emphasis added) (quoting Hudson v. Commonwealth, 267 Va. 36, 41, 591 S.E.2d 679, 682 (2004)), aff'd, 292 Va. 1, 798 S.E.2d 595 (2016).

With the record in this case clear that Craighead's counsel was not present to object, another question arising from this record is whether the court-initiated continuances, due entirely to Deatherage's absence, can ever toll the application of the sanction of the speedy trial statute. As previously mentioned, the exceptions to Code § 19.2-243 are not "all-inclusive." See id. It follows that "judicially recognized exceptions to the time requirement are permissible as long as they are of a similar nature and have the same rationale as the enumerated exceptions." Id. at 93-94, 774 S.E.2d at 488 (referencing Stephens, 225 Va. at 230, 301 S.E.2d at 25). "We have said that the rationale behind the exceptions in Code § 19.2-243 is to provide for speedy trial exceptions in circumstances 'beyond the control of the trial judge and the parties, when delays are warranted to ensure a fair trial to both the accused and the Commonwealth." Id. at 94, 774 S.E.2d at 488-89 (quoting Schwartz v. Commonwealth, 45 Va. App. 407, 426, 611 S.E.2d 631, 641 (2005) (internal quotations omitted)).

Here, in the absence of express statutory language creating an exception for delays attributable to the nonappearance of a defendant's trial counsel, we must consider the reason for the absenteeism and whether such a reason is "of a similar nature" and rationale to those enumerated in the statute. In Wallace, we concluded that a delay caused by a medical emergency in the prosecutor's family tolled the expiration of the statutory speedy trial time requirement because the reason for the delay was "of similar nature" to the statutory exception for a witness who is "prevented from attending by sickness or accident." See id. at 94-95, 774 S.E.2d at 488-89; see also Code § 19.2-243(2). We reached this conclusion, in part, by acknowledging that "[a] jury trial cannot go forward in the absence of any of the main participants, and a

- 11 -

prepared prosecutor is undoubtedly one of those main participants." Id. at 94, 774 S.E.2d at 489. Further, commenting on the importance of ensuring a fair trial to both the accused and the Commonwealth, this Court concluded that a "legitimate and serious family medical emergency" resulting in the absence of a prosecutor qualified under the reason and spirit of Code § 19.2-243's tolling provisions. See id. at 94-95, 774 S.E.2d at 489.

The rationale in Wallace is equally applicable here. The circuit court continued Craighead's case due to the absence of his counsel. To the extent that Deatherage's absence was due to his hospitalization for whatever underlying reason, his failure to appear to represent Craighead was both unanticipated and beyond the control of the circuit court or the prosecutor. Further, Deatherage was one of the "main participants" in the case, with special knowledge of the legal and factual issues before the circuit court. Otherwise, had the circuit court refused a continuance, the necessary result of doing so would force Craighead to proceed to trial *pro se*—a clear violation of his Sixth Amendment right to counsel in the absence of a knowing, voluntary, and intelligent waiver. Moreover, the clear legislative intent behind Code § 19.2-243 is to prevent dilatory actions on the part of the Commonwealth that would deprive criminal defendants of an expeditious opportunity to have their day in court. We do not construe from a plain reading of this clearly procedural statute that the General Assembly intended to require dismissal of charges for continuances unrelated to any affirmative actions on behalf of the Commonwealth seeking such delays. Neither do we read the statute as requiring a defendant in a criminal case to make the Hobson's Choice between receiving a speedy trial or a fair trial when he is entitled to both. To hold otherwise would also encourage defense through absence.

On the record before us, we hold that, barring clear evidence of bad faith on the part of the Commonwealth, the absence of Craighead's counsel that resulted in his failure to object to the *sua sponte* continuances by the circuit court tolled the deadline for providing a speedy trial as

required by Code § 19.2-243 and also, to the extent that either continuance resulting from the absence of Deatherage was due to his hospitalization, such absence was "of a similar nature" and rationale to other tolling provisions of that statute. As a result, we hold that the circuit court erred in its judgment that the ninety-three days from February 21, 2017 to May 25, 2017, resulting from the failure of Deatherage to appear, did not extend the speedy trial deadline as provided by Code § 19.2-243.

Craighead also argues that, notwithstanding any exception the statute may provide, the Commonwealth suggested the continuances at issue in bad faith and, as a sanction, "the continuances . . . should be imputed to the Commonwealth." According to Craighead, "[t]he Commonwealth Attorney took advantage of [Deatherage's] failure to appear to conceal that, on February 21, 2017 and May 25, 2017, the Commonwealth was not ready for trial" because the confidential informant failed to appear on both dates. Craighead argues that the confidential informant's failure to appear resulted in the Commonwealth "demanding" that the continuances be attributed to Craighead, which placed him in a "repugnant position" considering his lack of legal knowledge. Only after obtaining the continuances did the Commonwealth request that the circuit court issue a *capias* for the confidential informant. Craighead argues that, based on these facts, "[t]he reasonable inference is that the Commonwealth recognized that it would be unable to prove its case without the testimony of the confidential informant" and "used various obfuscations to hide its predicament."

Absent more than Craighead's bald accusation of bad faith on the part of the Commonwealth, we will not impute the continuances to the Commonwealth. See Taylor v. Commonwealth, 4 Va. App. 45, 51, 354 S.E.2d 74, 78 (1987). While case law does provide some authority for what constitutes bad faith in a speedy trial claim, the issue is more developed in the Fourth Amendment context. According to our Supreme Court, a bad faith analysis "turns

- 13 -

almost entirely upon the subjective motivation or state of mind." Logan v. Commonwealth, 279 Va. 288, 293, 688 S.E.2d 275, 278 (2010). To establish bad faith, "the evidence must show" that the action "was motivated by bias, personal animus, a desire to harass, a conscious intent to circumvent the law, or a similar improper motive." Id. (citing Commonwealth v. Michaliga, 947 A.2d 786, 792-93 (Pa. Super. 2008).

At no point did the circuit court find that the Commonwealth acted in bad faith. Further, the current record before us could not support such a finding. Reviewing the transcript from February 21, 2017, it is clear that the Commonwealth suggested the continuance based on Deatherage's absence and it is certainly axiomatic that Craighead could not be tried in the absence of his counsel barring a knowing, voluntary, and intelligent waiver of his right to counsel. The mere fact that the Commonwealth suggested that a continuance was appropriate in these circumstances or that a delay occasioned by the absence of Deatherage would also benefit the Commonwealth by not having to request one on its own behalf, is not indicative of bad faith. The circuit court agreed with the Commonwealth that Craighead could not proceed to trial without counsel and therefore a continuance was appropriate. It then proceeded to ensure that Craighead understood the reason for the continuance. Speaking to Craighead directly, the circuit court noted "Mr. Deatherage is out. He's unavailable so we can't do your case today." The transcript from May 25, 2017 is similar. There, the Commonwealth advised the circuit court that it had received an email that morning from Deatherage "indicating that he would be going to the hospital . . . [and] would not be able to make it to court." As a result, the Commonwealth suggested that it "would be appropriate to continue the matter." Agreeing with the Commonwealth and noting its concern that Craighead should receive a fair trial, the circuit court continued the case.

Craighead's reliance upon various statements in the record to support his argument that the Commonwealth acted in bad faith is unpersuasive. Reviewing the record, there is no evidence suggesting, much less establishing, that the Commonwealth acted in bad faith. Rather, the record supports the conclusion that both the circuit court and the Commonwealth agreed that the continuances would ensure that Craighead received a fair trial following Deatherage's failures to appear.

### C. Commonwealth's Exhibit 1

The Commonwealth's second assignment of error argues that the circuit court also erred when it refused to admit the March 9, 2017 email from the circuit court's scheduling assistant to the Commonwealth's Attorney. The Commonwealth argued in the circuit court, and maintains on appeal, that the email was admissible to provide context for why the case was continued. However, the circuit court refused the exhibit because it determined that its review of the speedy trial issue was limited to the record and because it concluded that the email was inadmissible hearsay.

The Commonwealth's right of appeal "is narrowly circumscribed." Commonwealth v. Brown, 8 Va. App. 41, 43, 378 S.E.2d 623, 624 (1989). In relevant part, Code § 19.2-398(A)(1) provides that, in a felony case, the Commonwealth may appeal from "[a]n order of a circuit court dismissing a warrant, information or indictment, . . . on the ground that (i) the defendant was deprived of a speedy trial in violation of the provisions of . . . [Code] § 19.2-243[.]" This statute "was not enacted to allow Commonwealth appeals from all allegedly erroneous pre-trial rulings by the trial court." Brown, 8 Va. App. at 43, 378 S.E.2d at 624. Moreover, under this Court's precedent, the Commonwealth's right to appeal is "strictly construed against the state and limited in application to cases falling clearly within the language of the statute." Commonwealth v.

Hawkins, 10 Va. App. 41, 44, 390 S.E.2d 3, 4 (1990) (quoting Crews v. Commonwealth, 3 Va. App. 531, 536, 352 S.E.2d 1, 3 (1987)).

Our subject matter jurisdiction in these appeals by the Commonwealth does not include alleged evidentiary errors.  The record is clear that the circuit court refused to admit the March 9, 2017 email after concluding that the email constituted inadmissible hearsay.  The language of Code § 19.2-398 plainly does not allow the Commonwealth to appeal evidentiary rulings.  Therefore, we lack the authority to address this assignment of error.

### III.  CONCLUSION

For the reasons stated above, the circuit court erred in attributing to the Commonwealth the ninety-three days that delayed setting this case for trial caused by the absences of Craighead's initial trial counsel.  To the extent that this erroneous attribution resulted in the circuit court's judgment that dismissal of the two indictments against Craighead for the failure of the Commonwealth to provide him with a speedy trial was required by Code § 19.2-243, this judgment was also error.  As a result, we reverse the judgment of the circuit court and remand the matter to the circuit court for further proceedings consistent with this opinion if the Commonwealth is so advised.

Reversed and remanded.