## Norfolk

CORNELIUS WILSON

v.

COMMONWEALTH OF VIRGINIA

No. 1980-89-1

Decided January 21, 1992

Counsel

Leslie Page Smith, for appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

Opinion

**COLEMAN, J.**—Cornelius Wilson was convicted in a bench trial of attempted abduction and the use of a firearm during the abduction. The sole evidence leading to the charges against Wilson and the only evidence which implicated him as the perpetrator was his confession to a police officer. Wilson contends that the confession was involuntary and that he confessed only because of the deceitful tactics employed by the Hampton police in falsely telling him that the victim to the attempted abduction had positively identified him from a lineup as her assailant.

■ The United States Supreme Court held in *Miller v. Fenton*, 474 U.S. 104 (1985),[1] that whether a confession is voluntary is ultimately a legal question requiring independent *federal* determination, *id.* at 110 (emphasis added), but subsidiary factual questions decided in the trial court are entitled to a presumption of correctness before the appeals court. *Id.* at 112. *See also Arizona v. Fulminante*, 111 S. Ct. 1246, 1252 (1991) (the ultimate issue of voluntariness is a "legal question requiring independent *federal* determination"). After the *Fenton* decision, the Supreme Court of Virginia in *Gray v. Commonwealth*, 233 Va. 313, 356 S.E.2d 157, *cert. denied*, 484 U.S. 873 (1987), defined the standard for appellate review of whether a confession is voluntary as requiring an independent examination of the totality of the circumstances to determine "whether the statement is the 'product of an essentially free and unconstrained choice by its maker,' or whether the maker's will 'has been overborne and his capacity for self-determination critically impaired.' " *Id.* at 324, 356 S.E.2d at 163 (citations omitted). The *Gray* decision expanded the earlier scope of appellate review in deciding whether a confession was voluntary, which was that the

finding [of voluntariness] is entitled to the same weight as a fact found by a jury and that finding will not be disturbed unless plainly wrong . . . . We must. . .determine whether in light of the totality of the circumstances, the trial court was plainly wrong in concluding that . . . [the] statement . . . was essentially a free and unconstrained choice . . . or, put another way, that . . . [the] will was *not* overborne.

*Rodgers v. Commonwealth*, 227 Va. 605, 609, 318 S.E.2d 298, 300 (1984). *But see Williams v. Commonwealth*, 234 Va. 168, 360 S.E.2d 361 (1987), *cert. denied*, 484 U.S. 1020 (1988). Nevertheless, guided by *Miller v. Fenton* and *Gray v. Commonwealth*, and most recently by *Yeatts v. Commonwealth*, 242 Va. 121, 410 S.E.2d 254 (1991), it is clear that we must conduct an independent review of the question whether a confession is voluntary. However, in making that determination, we are bound by the trial court's subsidiary factual findings unless those findings are plainly wrong. We have consistently taken this approach. *See Goodwin v.*

---

[1] *Fenton* involved an interpretation of 28 U.S.C. § 2254(d), under which state court findings of fact "shall be presumed to be correct."

*Commonwealth,* 3 Va. App. 249, 253, 349 S.E.2d 161, 163 (1986); *Kauffmann v. Commonwealth,* 8 Va. App. 400, 405, 382 S.E.2d 279, 281 (1989); *Lanier v. Commonwealth,* 10 Va. App. 541, 555-56, 394 S.E.2d 495, 504 (1990); *Shell v. Commonwealth,* 11 Va. App. 247, 252, 397 S.E.2d 673, 676 (1990); *Mundy v. Commonwealth,* 11 Va. App. 461, 477, 390 S.E.2d 525, 533 (1990), *cert. denied,* 112 S. Ct. 127 (1991).

■ All circumstances surrounding Wilson's interrogation and confession, including the details of the interrogation and the characteristics of the accused, must be independently evaluated in order to decide whether his confession was the product of an essentially free and unconstrained choice by him or whether his will was overcome and his capacity for self-determination critically impaired. *See Wyrick v. Fields,* 459 U.S. 42, 49 (1982) (per curiam); *Goodwin,* 3 Va. App. at 253, 349 S.E.2d at 163. Wilson was arrested in Norfolk on a charge unrelated to that for which he was convicted. He was arrested on June 8, 1989, at approximately 2:00 p.m. The Norfolk officers advised him of his *Miranda* rights at 4:00 p.m., and he signed a form acknowledging that he had been advised of those rights. The Norfolk police officers re-advised him of his rights under *Miranda* at 4:59 p.m., and he executed a second form acknowledging that he had been so advised. As part of the *Miranda* warnings, Wilson was advised that if he made any statements, he would be giving up his right to remain silent and that any statement he made could be used against him in a court of law. Wilson did not indicate that he desired to remain silent or that he wanted the officers to refrain from questioning him; likewise, he did not demand an attorney. However, he did not indicate that he wished to make any statement regarding his possible involvement in the Norfolk offenses for which he had been arrested.

The Norfolk police officers contacted the Hampton authorities sometime around 5:00 p.m. on June 8 to report that Wilson was suspected of an offense in Norfolk that was similar to an incident they had under investigation in Hampton that occurred on April 17. The Hampton officers contacted Irene K. Rogers, the victim of the Hampton offense, and arranged for her to come to the Norfolk Police Department to see if she could identify from a lineup anyone who had been her assailant. Wilson was included in the lineup. Mrs. Rogers was unable to identify Wilson or anyone

in the lineup as her assailant. In fact, she told the officers that it was unlikely that she would ever be able to identify the person who had assaulted her.

After the lineup, Officer Browning of the Hampton Police Department met with Wilson for the first time. Browning advised Wilson of his *Miranda* rights. Wilson did not indicate that he wished to remain silent and not speak with Browning. Wilson voluntarily continued to converse with Browning. Browning told Wilson that Mrs. Rogers had positively identified him as her attacker in the Hampton incident. Browning knew this to be a lie and admitted lying to Wilson in the hopes of eliciting a confession from him. Wilson then gave a detailed written statement confessing that he attempted to abduct Mrs. Rogers in Hampton to get jewelry or money from her.

At the suppression hearing, Norfolk police officers testified that they noticed nothing unusual about Wilson's behavior after he was arrested and while he was interrogated. According to the officers' testimony, Wilson seemed to understand the questions and responded appropriately. Wilson did not give any indication that he was confused or did not understand the proceedings or questions. He gave no indication that he was under the influence of drugs. The officers gave him food and drink during the interrogation. The interview with the Hampton officer lasted approximately one hour. After the officer told Wilson that Mrs. Rogers had identified him, Wilson at first continued to deny involvement. When the officer furnished some details as to how and when the incident occurred, Wilson responded, "I remember that. I wasn't going to rape her, though. It was about money and jewelry. . . . Oh, she did spray me with something, but it just hit the side of my face."[2] At no time did Wilson indicate that he did not wish to continue speaking with the officer. After the interrogation, Wilson commented to the Hampton officer that the officer was one of the most sincere persons with whom he had ever spoken.

Wilson testified at the suppression hearing that if it had not been for the falsehood which Browning used to deceive him, he would not have made an incriminating statement concerning the incident.

---

[2] Mrs. Rogers testified that she sprayed her assailant with mace and then fled.

 The Commonwealth has the burden of establishing by a preponderance of the evidence that a statement by an accused admitting his participation in criminal activity or implicating himself was freely and voluntarily made. *Griggs v. Commonwealth*, 220 Va. 46, 49, 255 S.E.2d 475, 477 (1979); *Goodwin*, 3 Va. App. at 252, 349 S.E.2d at 163. "We do not condone [a police officer using deceit or misrepresentation to influence a suspect to confess]. Under different circumstances, we would not hesitate to find that police misrepresentations concerning the strength of the case against the accused undermined the accused's free will." *Foster v. Commonwealth*, 8 Va. App. 167, 175, 380 S.E.2d 12, 16 (1989). A deliberate falsehood by a police officer in the course of his duties may undermine the respect that significant segments of the public may have for law enforcement and the system of justice. This concern, however, is not the basis upon which we must determine if the police have obtained an involuntary confession. Although Detective Browning was not truthful with Wilson when he advised him that the victim had positively identified him, that is only one factor that must be considered in determining whether Wilson's will was overcome and his capacity for self-determination critically impaired.

> *Miranda's* prohibition against threats, trickery or cajolery was not intended to preclude in all circumstances trickery concerning merely one aspect of the factual strength of the case against the accused . . . [particularly when n]othing about the misrepresentation impede[s the defendant's]. . . "ability to understand the nature of his rights and the consequences of abandoning them."

*Foster*, 8 Va. App. at 174-75, 380 S.E.2d at 16 (quoting *Moran v. Burbine*, 475 U.S. 412, 424 (1986)).

 When Wilson's confession is viewed in the light of the totality of the circumstances, it is apparent that he was fully cognizant of his situation, was in control of his cognitive powers, understood the circumstances, and was exercising his free will when he admitted his involvement in the crime. In other words, the circumstances, including the misrepresentation, were not so compulsive or coercive that Wilson was prevented from weighing his options, understanding the situation, and making a knowing and calculated decision to confess to his involvement. While he may have been

tricked or influenced by the tactics of the officer, the interrogation was not so compelling or coercive that he was not able to consider his options and exercise his will. "[A] lie on the part of an interrogating police officer does not, in and of itself, require a finding that a resulting confession was involuntary." *Rodgers*, 227 Va. at 616, 318 S.E.2d at 304. "The fact that the police misrepresented the statements that [a witness has] made is, while relevant, insufficient in our view to make this otherwise voluntary confession inadmissible . . . and on the facts of this case we find no error in the admission of . . . [the] confession." *Frazier v. Cupp*, 394 U.S. 731, 739 (1969). Accordingly, we affirm the convictions.

*Affirmed.*

Barrow, J., and Moon, J., concurred.