COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Clements and Senior Judge Hodges
Argued at Chesapeake, Virginia


ANGELA LYNN NACKE

                                    MEMORANDUM OPINION* BY
v.    Record No. 2501-99-1      JUDGE JEAN HARRISON CLEMENTS
                                       NOVEMBER 7, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                   Everett A. Martin, Jr., Judge

           Ronald F. Schmidt (Ronald F. Schmidt, P.C.,
           on brief), for appellant.

           Michael T. Judge, Assistant Attorney General
           (Mark L. Earley, Attorney General, on brief),
           for appellee.


     Juvenile appellant Angela Lynn Nacke was convicted of felony

murder, hit and run, eluding a police officer, grand larceny, and

conspiracy.  On appeal, she contends the trial court erred in

denying her motion to suppress the inculpatory statement she gave

to police detectives following her arrest.[1]  Finding no error, we

affirm the judgment of the trial court.

     As the parties are fully conversant with the record in this

case and because this memorandum opinion carries no precedential

_____

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

        [1] Pursuant to a plea agreement, appellant entered
conditional guilty pleas to the charges of which she was
subsequently convicted reserving a right to appeal the trial
court's ruling on her suppression motion.

value, this opinion recites only those facts necessary to a disposition of this appeal.

Specifically, Nacke asserts on appeal that given her age, her mental capacity, her condition at the time the statement was given, her naiveté in the criminal justice system, and the "adult" method used by detectives to advise her of her rights and obtain her waiver, she did not knowingly, intelligently, and voluntarily waive her <u>Miranda</u> rights.  It was, she contends, error, therefore, on the part of the trial court to deny her motion to suppress the confession she gave to the police during a custodial interrogation.

On appeal from a trial court's denial of a motion to suppress, we review the evidence in the light most favorable to the Commonwealth granting to the Commonwealth all reasonable inferences fairly deducible from it.  <u>E.g.</u>, <u>Commonwealth v. Grimstead</u>, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).  Furthermore, we are bound by the trial court's findings of historical fact unless plainly wrong or without evidence to support them.  <u>E.g.</u>, <u>McGee v. Commonwealth</u>, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc).  However, we review <u>de</u> <u>novo</u> "the trial court's application of defined legal standards to the particular facts of a case."  <u>Timbers v. Commonwealth</u>, 28 Va. App. 187, 193, 503 S.E.2d 233, 236 (1998).

When an accused seeks suppression of a confession given during a custodial interrogation, the Commonwealth has the

-

burden of proving that the accused was apprised of her Miranda rights and that she knowingly, intelligently, and voluntarily waived those rights. Grogg v. Commonwealth, 6 Va. App. 598, 611, 371 S.E.2d 549, 556 (1988). "A heavy burden rests upon the Commonwealth to demonstrate that the accused has made a valid waiver." Id.

In assessing whether a waiver was knowingly and intelligently made, "the court must examine the totality of the circumstances," including, when the accused is a juvenile, "'the juvenile's age, experience, education, background, and intelligence,'" and whether the juvenile has the "'capacity to understand the warnings given [her], the nature of [her] Fifth Amendment rights, and the consequences of waiving those rights.'" Roberts v. Commonwealth, 18 Va. App. 554, 557, 445 S.E.2d 709, 711 (1994) (quoting Fare v. Michael C., 442 U.S. 707, 725 (1979)). The presence of a parent, guardian, counsel, or some other interested adult when a juvenile waives constitutional rights and admits to a crime is a factor weighing in favor of a determination that the waiver was knowingly and intelligently made. See Grogg, 6 Va. App. at 613, 371 S.E.2d at 557. Conversely, a juvenile's lack of previous exposure to the criminal justice system is a factor weighing against a finding that the waiver was knowing and intelligent. See Green v. Commonwealth, 223 Va. 706, 710, 292 S.E.2d 605, 608 (1982). The issue of whether a waiver was knowingly and intelligently made

-

"is a question of fact, and the trial court's resolution of that question is entitled on appeal to a presumption of correctness." Harrison v. Commonwealth, 244 Va. 576, 581, 423 S.E.2d 160, 163 (1992).

The voluntariness issue, on the other hand, is a question of law requiring an independent determination on appeal. E.g., Wilson v. Commonwealth, 13 Va. App. 549, 551, 413 S.E.2d 655, 656 (1992). However, like the knowing and intelligent issue, it too requires an examination of the totality of the circumstances. Id. "In assessing voluntariness, the court must determine whether 'the statement is the product of an essentially free and unconstrained choice by its maker, or . . . whether the maker's will has been overborne and [her] capacity for self-determination critically impaired.'" Roberts, 18 Va. App. at 557, 445 S.E.2d at 711 (omission in original) (quoting Stockton v. Commonwealth, 227 Va. 124, 140, 314 S.E.2d 371, 381 (1984) (internal quotations omitted)). In making that independent determination, "we are bound by the trial court's subsidiary factual findings unless those findings are plainly wrong." Wilson, 13 Va. App. at 551, 413 S.E.2d at 656. "Conflicts in evidence present factual questions that are to be resolved by the trial court" which "must evaluate the credibility of the witnesses, resolve the conflicts in their testimony and weigh the evidence as a whole." Mills v. Commonwealth, 14 Va. App. 459, 468, 418 S.E.2d 718, 723 (1992).

-

Relevant factors in determining voluntariness include the details of the interrogation, such as whether the police used coercive or deceitful tactics, and the characteristics of the accused, such as her physical and psychological condition at the time of the interrogation. See Riddick v. Commonwealth, 22 Va. App. 136, 146, 468 S.E.2d 135, 140 (1996). Moreover, when the accused is a juvenile, "'the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair.'" Grogg, 6 Va. App. at 612-13, 371 S.E.2d at 556 (quoting In re Gault, 387 U.S. 1, 55 (1967)).

Here, the record discloses that the accused was 14 1/2 years of age at the time the custodial interrogation took place. She attended high school where she was a B and C student. She had never been arrested before.

At the suppression hearing, appellant's expert, a licensed clinical psychologist, testified that Nacke's reading comprehension was at the mildly retarded level. Her verbal comprehension and verbal IQ, however, were within the normal range of intelligence, and her overall IQ was in the "low normal" range. The expert concluded that Nacke's "intellectual capabilities and her academic skills were clearly above the retarded range."

-

Nacke was arrested at approximately midnight and was transported to a hospital for treatment of her sprained ankle. Despite having gotten only a few hours of sleep in the preceding day and a half, the accused was alert, fully awake, cooperative, and not under the influence of alcohol or drugs when apprised of her Miranda rights at the hospital by Detective Goldberg. Nacke's mother was present while Nacke was given her legal rights.

Upon meeting her at the hospital, Goldberg told Nacke he would need to advise her of her legal rights before he could talk to her. In response to the detective's initial questions, Nacke indicated that she could read and write and that she understood English. At Goldberg's request, she wrote the date on the Norfolk Police Department Legal Rights Advice Form given to her by the detective and then read aloud the first right from that form. She read it, according to Goldberg, clearly, accurately, and without hesitation. When asked by the detective if she understood that right, she said she did, and when asked to explain her understanding of it, she said, "I don't have to talk to you if I don't want to."

Directing Nacke to follow along, the detective then read aloud the rest of the rights form and Nacke initialed and wrote "yes" by each item after it was read, indicating that she understood the specific enumerated right, that her rights had been fully explained to her and she understood them completely,

-

that she waived the rights and wished to make a statement, and that her statement was freely and voluntarily made without any threat or promise. Detective Goldberg testified at the suppression hearing that this was the same method he used when advising adults of their Miranda rights and the same method he had been using all eleven years he had been on the police department.

Although invited by Detective Goldberg to ask any questions about Nacke's legal rights as he was going through the form, neither Nacke nor her mother asked any questions. Nacke then signed and dated the rights form at 1:56 a.m., and her mother and Goldberg signed as witnesses. At no point during the reading of the rights or during the subsequent interrogation and review of Nacke's statement did Nacke or her mother indicate that Nacke did not wish to speak with Goldberg or that she wanted to have a lawyer present.

Nacke did indicate, however, when asked by Detective Goldberg, that she wanted her mother to wait out in the lobby during the interview itself. Nacke testified at the suppression hearing that she asked her mother to leave while she gave her statement because she did not want her mother to know everything she had done and she could tell her about it herself later. Before leaving, Nacke's mother told her daughter to "tell the truth," and Nacke said she would.

-

Detective Goldberg then talked with Nacke for approximately an hour.  During the interview, Nacke was alert, emotionally stable, articulate, and able to precisely describe the details of the crimes that she and her cohorts committed.

Following the initial interview, Goldberg took a recorded statement from the accused.  At the beginning of that statement, Nacke acknowledged that Goldberg had gone over her legal rights with her while her mother was present and that, knowing and understanding her legal rights, she desired to give a taped statement to the police regarding her criminal activities.  At the end of the statement, the accused acknowledged that her statement had been given voluntarily without any threat or promise by the police.  The statement was completed at approximately 3:42 a.m.

Goldberg then, after notifying Nacke's mother that the interview was over and that she could go see her daughter, went to the police station to have a typewritten transcript of the accused's statement prepared.  Once the statement was transcribed, the detective returned to the hospital, where the accused was still under treatment and observation by physicians. He gave the transcript to Nacke, who, with her mother present, reviewed it, corrected several errors in it, initialed the top and bottom of each page, and signed it at 9:01 a.m.  Nacke's mother also read the statement, both along with her daughter and on her own when Nacke was taken to a different room for about

-

twenty minutes for a CAT scan.  Goldberg testified that it took "a while" for Nacke to read the 29-page statement.  When asked at the suppression hearing if she had problems reading the statement, Nacke testified that she "did not have any problems reading it" but "kept dozing off every now and then."

The accused also testified at the suppression hearing that she did not understand at the time she waived her rights what the word "waive" meant.  She acknowledged, however, that she knew what "voluntarily" meant.  She testified she was afraid to ask questions during the reading of her rights because she did not want to appear ignorant.  She also testified that, while she understood that she could have had a lawyer at the interrogation and knew from watching television that "lawyers were there to help people and defend their clients," she did not believe she needed a lawyer at the custodial interrogation because she thought the detectives, unlike the uniformed police, were there to help her.  She thought, according to her testimony, that she would be able to go home if she cooperated with the detectives.

Noting the accused's age, her lack of previous contact with the criminal justice system, her low reading-comprehension test score, her lack of sleep, and the time of day the interrogation occurred, the trial court nevertheless found that Nacke knowingly and intelligently waived her Miranda rights.  The trial court pointed to the fact that Nacke's mother was present when the juvenile was apprised of and waived her rights, that

-

Nacke's verbal-comprehension test score was in the normal range, that Nacke was a "B, C student," and that Nacke was able to understand the questions she was asked at the suppression hearing and answer them appropriately without hesitation or befuddlement. The trial court also noted, in looking at Nacke's statement, that Nacke answered the questions asked of her during the interrogation appropriately, that she reviewed and made corrections to the transcript of her statement, and that she testified at the suppression hearing that she understood her statement. Based on the testimony of Nacke and of the detectives who interrogated her, the court determined that Nacke understood her legal rights, validly waived them, and voluntarily confessed. We agree.

Applying the appropriate standards of review, we find that the credible evidence in this case was sufficient to support the trial court's finding that Nacke knowingly and intelligently waived her Miranda rights. We also find that the trial court's finding was not plainly wrong.

Furthermore, based upon our independent examination of the totality of the circumstances, as reflected in the record, we conclude that, in waiving her legal rights and in giving her statement to the police, Nacke's will was not overborne, her capacity for self-determination was not critically impaired, and her confession was the product of an essentially free and unconstrained choice in the sense not only that it was not

-

coerced or improperly induced by the police, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright, or despair. We find in the record the description of an alert, responsive, articulate, and perceptive juvenile who had sufficient intellect to, and who did in fact, know and understand her Miranda rights and the ramifications of waiving those rights. She knew that she did not have to speak with Detective Goldberg and knew she could have a lawyer present if she wanted one, but she willingly chose to give a statement that could be used against her to Detective Goldberg without a lawyer there to represent her. We, like the trial court, are not persuaded by the accused's uncorroborated testimony that she thought the detectives were there to help her and that if she cooperated with them she would get to go home. The rest of the record belies such a lack of savvy on her part.

Moreover, appellant's mother was with her when she waived her rights. In fact, after Detective Goldberg advised Nacke of her Miranda rights, Nacke's mother, who testified that she understood all of her daughter's Miranda rights, did not tell the detective that she wanted an attorney for her daughter or that she did not want her daughter to talk to the police. She simply told her daughter to "tell the truth."

Furthermore, there is nothing in the record suggesting that the accused was pressured, intimidated, or tricked by the police into making her confession. Thus, we conclude that Nacke

-

voluntarily waived her rights and confessed.  The trial court did not, therefore, err in refusing to suppress her inculpatory statement.

Accordingly, we affirm the trial court's decision to overrule Nacke's motion to suppress her confession and affirm appellant's convictions.

<u>Affirmed.</u>