COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Elder and Frank
Argued at Chesapeake, Virginia


BRAM PATRICK DAGGS

                                   MEMORANDUM OPINION[*] BY
v.    Record No. 2231-99-1          JUDGE LARRY G. ELDER
                                      NOVEMBER 14, 2000
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF YORK COUNTY
                   Prentis Smiley, Jr., Judge

          Charles E. Haden for appellant.

          (Mark L. Earley, Attorney General; John H.
          McLees, Jr., Senior Assistant Attorney
          General, on brief), for appellee.


     Bram Patrick Daggs (appellant) appeals his bench trial

convictions for armed robbery of a bank and use of a firearm in

the commission of robbery.  On appeal, he contends the trial

court erroneously denied a motion to suppress his confession.

He contends the confession was not knowing, voluntary and

intelligent because it resulted from police trickery, deception

and coercion.  We hold, under the totality of the circumstances,

that the confession was the product of an essentially free and

unconstrained choice by its maker, and we affirm appellant's

conviction.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

A suspect must knowingly and intelligently waive his rights against self-incrimination and to the assistance of legal counsel in order for a confession made during a custodial interrogation to be admissible in evidence against him. See Morris v. Commonwealth, 17 Va. App. 575, 579, 439 S.E.2d 867, 870 (1994). Even when a suspect has waived his Miranda rights, his confession is inadmissible if it was involuntary for other reasons. See id. At a hearing on a defendant's motion to suppress a confession, the Commonwealth must prove by a preponderance of the evidence both that the accused waived his Miranda rights and that the confession was voluntary. See Mills v. Commonwealth, 14 Va. App. 459, 468, 418 S.E.2d 718, 722-23 (1992).

In reviewing these issues on appeal, we conduct an independent review of the ultimate legal question of whether a confession was voluntary. See Wilson v. Commonwealth, 13 Va. App. 549, 551, 413 S.E.2d 655, 656 (1992). However, "we are bound by the trial court's subsidiary factual findings unless those findings are plainly wrong." Id.

Assessing whether a confession is voluntary requires an examination of the totality of the circumstances to determine whether the statement is the "product of an essentially free and unconstrained choice by its maker," or whether the maker's will "has been overborne and his capacity for self-determination critically impaired." Schneckloth v. Bustamonte, 412 U.S. 218,

-

225, 93 S. Ct. 2041, 2046, 36 L. Ed. 2d 854 (1973). "[A] court must consider a myriad of factors, including the defendant's age, intelligence, background and experience with the criminal justice system, the purpose and flagrancy of any police misconduct, . . . the length of the interview . . . [, and any] moral and psychological pressures to confess emanating from official sources." Morris, 17 Va. App. at 579, 439 S.E.2d at 870. A lie by a law enforcement officer "does not, in and of itself, require a finding that a resulting confession is involuntary." Rodgers v. Commonwealth, 227 Va. 605, 616, 318 S.E.2d 298, 304 (1984). Whether police were truthful about the strength of the evidence against the accused while interrogating him is but "one factor that must be considered in determining whether [the defendant's] will was overcome and his capacity for self-determination critically impaired." Wilson, 13 Va. App. at 554, 413 S.E.2d at 658.

> Miranda's prohibition against threats, trickery or cajolery was not intended to preclude in all circumstances trickery concerning merely one aspect of the factual strength of the case against the accused . . . [particularly when n]othing about the misrepresentation impede[s the defendant's] . . . "ability to understand the nature of his rights and the consequences of abandoning them."

Foster v. Commonwealth, 8 Va. App. 167, 174-75, 380 S.E.2d 12, 16 (1989) (quoting Moran v. Burbine, 475 U.S. 412, 424, 106 S. Ct. 1135, 1142, 89 L. Ed. 2d 410 (1986)).

-

Courts are much less likely "to tolerate misrepresentations of law." 2 Wayne R. LaFave, Jerold H. Israel & Nancy J. King, Criminal Procedure § 6.2(c), at 458 (2d ed. 1999). However, for a legal or factual misrepresentation to impact the assessment of the voluntariness of a confession, the misrepresentation must have induced or contributed to the confession. See, e.g., Swann v. Commonwealth, 247 Va. 222, 232, 441 S.E.2d 195, 202 (1994). Where the legal misrepresentation occurs after the accused confesses, it cannot, as a matter of law, have induced or contributed to the confession. See Harrison v. Commonwealth, 244 Va. 576, 585-86, 423 S.E.2d 160, 165 (1992).

At the time of the challenged questioning, appellant was a literate nineteen-year-old with a high school equivalency certificate. He had previously been convicted of a misdemeanor, and he faced pending felony charges for two robbery offenses committed three months prior to the robbery at issue here. Although the precise parameters of his contact with the legal system do not appear in the record, he was not a complete stranger to the system. Viewing the evidence in the light most favorable to the Commonwealth, we reject appellant's claim that he "[did not] know how to go about this" because he had "never been in this situation" and had "never been questioned about anything like this." Further, nothing indicated that appellant was under the influence of drugs or alcohol at the time of the interview. During the interview, police offered appellant a

-

soda and allowed him to smoke cigarettes, and the questioning lasted only two hours, from approximately 3:00 to 5:00 p.m.  See 2 LaFave, Israel & King, supra, § 6.2(c), at 451 (questioning of only a few hours not likely to require exclusion unless evidence establishes defendant was "especially susceptible to coercion").  The trial court expressly found the interview was "very brief" and that appellant's "needs and . . . desires" were attended to.  The record supports this finding.

### A.  Appellant's Receipt and Waiver of Miranda Rights

> "[A] valid waiver [of Miranda rights] will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was eventually obtained."  [Miranda v. Arizona, 384 U.S. 436, 475, 86 S. Ct. 1602, 1628, 16 L. Ed. 2d 694 (1966)].  However, . . . "in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated."  North Carolina v. Butler, 441 U.S. 369, 373, 99 S. Ct. 1755, 1757, 60 L. Ed. 2d 286 (1979).

Harrison, 244 Va. at 582, 423 S.E.2d at 163-64; see Butler, 441 U.S. at 370-76, 99 S. Ct. at 1756-59 (upholding waiver determination where defendant received rights orally at time of arrest, read "Advice of Rights" form at FBI office, and said he understood rights and would talk to agents but would not sign waiver on form); Green v. Commonwealth, 223 Va. 706, 709-10, 292 S.E.2d 605, 607-08 (1982) (upholding waiver determination where juvenile executed written statement indicating he understood Miranda rights and explained to officers the elements of offense

-

he was suspected of committing before making confession).

Because the trial court here expressly found appellant indicated verbally while in the apartment that he understood his Miranda rights and the evidence supports this finding, we defer to the trial court's determination, by a preponderance of the evidence, that appellant validly waived his Miranda rights before being questioned by police and confessing to the charged crimes. See Mickens v. Commonwealth, 247 Va. 395, 406-07, 442 S.E.2d 678, 686-87 (1994).

### B.  Alleged Misrepresentations

#### 1.  Factual Evidence and Strength of Commonwealth's Case

Appellant challenges the statements of interviewers that eyewitnesses saw him at the scene of the robbery and subsequently saw him leave the suspected getaway car and enter apartment 103-C.  Police had a description and partial license plate number for the vehicle used in the robbery.  Several eyewitness descriptions of the person or people seen robbing the bank, leaving or parking the car or entering apartment 103-C matched the description of appellant in terms of race, height, weight and attire.  Coupled with the fact that "Bram" borrowed Julia Perry's car to drive it to York County, that the police found a firearm inside, and that appellant, who was known to Investigator Donnelly as Bram Daggs, was found inside apartment 103-C when the officers executed the search warrant, the police were justified in representing to appellant that he had been

-

positively linked to the car, the robbery and the apartment because he had been seen in all three places.

Appellant contends the officers' representations in this area were worsened by the fact that they suggested the eyewitness who saw appellant enter the apartment was a sheriff's deputy. We hold this is not a fair interpretation of the officers' statements. One inference from the statements was that the various locations of appellant and the vehicle were described by multiple witnesses, an inference which is supported by the record. The police misrepresentations, if any, were minor and do not support the conclusion that police tactics were unfairly coercive. See Wilson, 13 Va. App. at 554, 413 S.E.2d at 658 (upholding conviction where police told accused he had been positively identified by witness who, in fact, had been unable to identify him).

Appellant also complains the officers falsely told him that Edward Love, another occupant of apartment 103-C, had been linked to the robbery and that Love said he was with appellant. First, nothing in the record affirmatively establishes these statements were false. Second, even if the record established the officers' statements about Love were untrue, they would not require a finding, under the totality of the circumstances, that the statements were unfairly coercive. See Frazier v. Cupp, 394 U.S. 731, 739, 89 S. Ct. 1420, 1425, 22 L. Ed. 2d 684 (1969) (holding false statement that one of defendant's friends

-

confessed to crime about which defendant was being questioned did not render confession involuntary under totality test).

Appellant also contends the police falsely told him that his fingerprints had been lifted from the suspected getaway car and the rifle found inside the car. Again, this is not a fair representation of the officers' statements, and the record does not establish that the statements the officers did make were false.

### 2. Representations About Bond and Sentencing

During the questioning preceding appellant's first confession, Donnelly said he would tell the magistrate appellant had been cooperative and truthful but that "I have nothing to do with the actual making of a bond." Appellant then made a full confession before engaging in any additional conversation with the officers about bond. Appellant eventually received a bond of $500,000. Although he now contends this figure was so high it was the equivalent of no bond at all, he never asked the officers how much the bond would be or whether it would be "reasonable," and the officers made no representations about the amount of the bond.

Also prior to appellant's first confession, the officers stated only that appellant "could" be prosecuted in federal court, which would "not be good for [appellant]" because the sentencing structure was "day-for-day" with "no parole" and that the crime of "using a gun" required "automatic sentencing."

-

These assertions were true.  See 18 U.S.C. § 924(c) (1994 &
Supp. IV 1998); 18 U.S.C. §§ 3551-86 (1994 & Supp. IV 1998);
Project, Twentieth Annual Review of Criminal Procedure:  United
States Supreme Court and Courts of Appeals 1989-90, 79 Geo. L.
J. 591, 1163 (1991).  The officers also made clear that they
could not make any promises regarding the resolution of the
charges if appellant confessed and was prosecuted in the state
system but that they would accurately report his cooperation in
resolving the crime and recovering the stolen money.  Appellant
then made a full confession, indicating that he participated in
the planning of the robbery and drove the car, and he gave the
first names or nicknames of his accomplices.  The only
representations the officers made as appellant's confession
evolved related to the evidence against him.  They made no
further representations about trial and sentencing in the
federal system until after appellant had fully confessed the
first time.  We hold that the representations the officers made
about federal sentencing before appellant confessed were true
and that they did not override appellant's ability to make a
voluntary confession, either standing alone or in conjunction
with any of appellant's other claims.

Only after appellant's first full confession did the
officers give appellant further information about bond and
sentencing in the state and federal systems.  Assuming without
deciding that some of the officers' subsequent statements were

-

false or overly coercive, appellant had already given a full confession before these statements were made.  Thus, the confession could not, as a matter of law, have resulted from the challenged statements about bond or sentencing.  See Harrison, 244 Va. at 585-86, 423 S.E.2d at 165.

For these reasons, we hold the trial court did not err in denying the motion to suppress, and we affirm the convictions entered on appellant's conditional guilty pleas.

Affirmed.