COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Clements and Senior Judge Fitzpatrick
Argued at Richmond, Virginia


DARIUS T. HICKS

                                                   MEMORANDUM OPINION[*] BY
v.        Record No. 0430-06-4               JUDGE JOHANNA L. FITZPATRICK
                                                             MAY 1, 2007
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Stanley P. Klein, Judge

Joseph R. Winston, Special Appellate Counsel (Office of Appellate
Defender, on brief), for appellant.

Robert H. Anderson, III, Senior Assistant Attorney General
(Robert F. McDonnell, Attorney General, on brief), for appellee.


        A jury convicted Darius T. Hicks (appellant) of first-degree murder, using a firearm in the

commission of murder, and killing a fetus.  On appeal, appellant contends the trial court erred by:

1) denying his motion to suppress his statements to the police; 2) admitting evidence of prior bad

acts; and 3) admitting photographs of the deceased victim and her fetus.  Finding no error, we affirm

appellant's convictions.

                                                  I.

        On appeal, it is the appellant's burden to establish that the trial court's denial of a motion to

suppress was reversible error.  See Motley v. Commonwealth, 17 Va. App. 439, 440-41, 437 S.E.2d

232, 233 (1993).  "We are bound by the trial court's findings of historical fact unless 'plainly

wrong' or without evidence to support them[.]"  McGee v. Commonwealth, 25 Va. App. 193, 198,

487 S.E.2d 259, 261 (1997) (en banc).  "On appeal from a motion to suppress evidence, we

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

review the evidence in the light most favorable to the prevailing party." Shaver v. Commonwealth, 30 Va. App. 789, 794, 520 S.E.2d 393, 396 (1999).

So viewed, the evidence proves that during the early morning hours of November 25, 2004, Mathew Grimes discovered the body of Shawndre Fulton in a Fairfax County park. Fulton had sustained eight gunshot wounds, and died due to blood loss from the wounds. Fulton was thirty-four weeks pregnant when she died. The fetus did not survive.

At about 3:30 p.m. on December 10, 2004, Fairfax County Detectives Steven Milefsky and John Wallace interviewed appellant in a Florida jail where he was incarcerated on other charges. The detectives met with appellant in an interview room and removed his handcuffs and leg shackles. Using a preprinted form, Milefsky read appellant his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). Appellant indicated that he understood each one, read aloud the portion of the form entitled "Consent to Speak," and signed the form.[1]

The detectives provided appellant with water and permitted him bathroom breaks as they interviewed him. Appellant did not complain of discomfort, thirst, or hunger. Appellant answered the officers' questions coherently and initially made no admissions regarding Fulton's death. He asked what had happened to Fulton and whether there were any photographs of her and the fetus. Milefsky stated appellant might not be "up to" viewing the photographs, but appellant insisted upon seeing the photographs. Appellant cried when he viewed the photographs, but denied any involvement.

At 7:25 p.m., appellant said he did not want to talk any more and he was "just going to have to live with it." The detectives prepared to leave, but appellant said, "Sit down. I'll tell you what you want to know." Appellant admitted he repeatedly shot Fulton. Appellant said they had been

---

[1] The paragraph under "Consent to Speak" stated: "I know what my rights are. I am willing to make a statement without a lawyer present. I understand and know what I am doing. No promises or threats have been made to me by anyone."

playing with the gun when it began to fire, and appellant was unable to stop it. Appellant said his finger was on the trigger, but it "just got stuck."

The detectives requested to record appellant's statement on tape. Initially, appellant said he did not want to give a recorded statement, but then agreed. However, during the recording appellant mumbled, lowered his head, and the recording session terminated because the equipment was not recording properly.

Appellant then said he had "decided to take it all back. . . . [W]hatever I told you, I was just telling you what you wanted to hear, and I take it all back. I didn't kill her." Milefsky commented that the officers had not believed portions of appellant's statement, particularly his claims about the gun firing repeatedly. Appellant retorted that "that's the way it happened."

Appellant's leg shackles were reapplied, and the detectives left the interview room. While the detectives were waiting for appellant to be transported back to jail, a marshal approached and advised them that appellant wanted to make a second recorded statement.

The detectives returned to the interview room. Appellant said he wanted to make a second taped statement. During the second statement, appellant again characterized the killing as an accident. He claimed that the gun fired once and the bullet struck Fulton's foot. The trigger got stuck, and the shots "kept coming." Appellant admitted he understood his <u>Miranda</u> rights, voluntarily signed the consent form, and wanted to speak to the police. Appellant also acknowledged that he reinitiated contact with the police after the failed first attempt to record a statement.

At the suppression hearing, appellant asserted that he made the taped statement to persuade the detectives to end the questioning. He denied that the police read him his <u>Miranda</u> rights, but simply gave him the waiver form and told him to sign it. He claimed he remained shackled during the entire interview, was given no food or water, and was not permitted bathroom breaks. Appellant

said he did not want to see the photographs of Fulton and the fetus, but the officers insisted that he view them.

At the conclusion of the suppression hearing, the trial court denied appellant's motion to suppress, finding appellant knowingly and voluntarily waived his Miranda rights. The trial court concluded appellant initiated the conversation that ended with his recorded statement. Additionally, the trial court found appellant's will was not overborne by the circumstances or the actions of the police. Appellant challenges the trial court's ruling on appeal.

Analysis

"The validity of a waiver of rights guaranteed by Miranda is a factual determination and if supported by the evidence will not be reversed on appeal." Terrell v. Commonwealth, 12 Va. App. 285, 288, 403 S.E.2d 387, 388-89 (1991). "When a suspect voluntarily makes a knowing and intelligent waiver of his constitutional rights, that waiver remains valid through subsequent interviews until the suspect manifests a desire to revoke it." Shell v. Commonwealth, 11 Va. App. 247, 255, 397 S.E.2d 673, 677 (1990).

Viewed in the light most favorable to the Commonwealth, the evidence supported the trial court's conclusions that the police advised appellant of his Miranda rights prior to questioning him, that he understood his rights, and that he chose to waive them and speak to the police. Milefsky testified that appellant acknowledged understanding each of his rights as they were read to him from a preprinted form. Appellant then signed the "Consent to Speak" portion of the form. Therefore, we find no reason to disturb the trial court's ruling.

Appellant also contends the police did not stop the interrogation when he requested that they do so. "Miranda recognized that if a suspect 'indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.'" Midkiff v.

Commonwealth, 250 Va. 262, 267, 462 S.E.2d 112, 115 (1995) (quoting Miranda, 384 U.S. at 473-74).

The record belies appellant's claim that the officers did not honor appellant's requests to end the questioning. After the detectives questioned appellant for a period of time, he indicated that he did not want to talk any more. The police stood and acknowledged that appellant had the right to refuse to talk. As the detectives were preparing to leave, however, appellant told the officers to remain and he would tell them what they wanted to know. Appellant made clear that he was not invoking his right to remain silent at that juncture and desired to continue speaking to the detectives. Thus, there was no basis to conclude appellant invoked his right to remain silent or that the police did not honor his invocation.[2]

Appellant also contends his statement was involuntary because the police "took advantage of his emotional state" and had him view the photographs of Fulton and the fetus against his will. In determining whether a statement was made voluntarily,

> "[w]e must [independently] determine whether, in light of the totality of the circumstances, including not only the details of the interrogation, but also the characteristics of the accused, the

---

[2] Appellant also argues his statements were involuntary because the police lied by stating it would be to his benefit to make a recorded statement. Appellant did not raise this argument in the trial court. "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). See Rule 5A:18. Rule 5A:18 applies to bar even constitutional claims. See Deal v. Commonwealth, 15 Va. App. 157, 161, 421 S.E.2d 897, 900 (1992). Accordingly, Rule 5A:18 bars our consideration of this aspect of appellant's argument on appeal.

> Although Rule 5A:18 allows exceptions for good cause or to meet the ends of justice, appellant does not argue that we should invoke these exceptions. See e.g., Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997) ("In order to avail oneself of the exception, a *defendant must affirmatively show* that a miscarriage of justice has occurred, not that a miscarriage might have occurred." (emphasis added)). We will not consider, *sua sponte*, a "miscarriage of justice" argument under Rule 5A:18.

Edwards v. Commonwealth, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (*en banc*).

statement was the product of an essentially free and unconstrained choice by its maker, or whether the maker's will was overcome and his capacity for self-determination critically impaired."

Novak v. Commonwealth, 20 Va. App. 373, 386-87, 457 S.E.2d 402, 408 (1995) (quoting Goodwin v. Commonwealth, 3 Va. App. 249, 253, 349 S.E.2d 161, 163-64 (1986)). The voluntariness issue is a question of law requiring an independent determination on appeal. See Wilson v. Commonwealth, 13 Va. App. 549, 551, 413 S.E.2d 655, 656 (1992). In making that independent determination, however, "we are bound by the trial court's subsidiary factual findings unless those findings are plainly wrong." Id. Relating to the voluntariness of a suspect's statement, the Supreme Court has held that "[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." Colorado v. Connelly, 479 U.S. 157, 164 (1986).

There was no evidence of coercion or mistreatment on the part of the police in the present case. Accordingly, the trial court did not err in finding appellant's statements were voluntary, and in denying appellant's motion to suppress.

II.

Appellant contends the trial court erroneously admitted evidence of "bad acts" for which he was not on trial. Specifically, the Commonwealth introduced testimony regarding two occasions, occurring within six months of Fulton's death, when appellant physically abused Fulton. In May 2004, appellant appeared at Fulton's home during the early morning hours when he pounded on the window and angrily demanded to see Fulton. Fulton went outside with appellant. Fulton's mother overheard appellant shouting at Fulton, then saw him hit Fulton in the face. Fulton's mother called the police to the scene. Additionally, Mathew Grimes described a later incident that occurred in August 2004. He stated that appellant screamed at Fulton, accused her of having an improper relationship with Grimes, and hit her on the head twice.

As a general rule,

> evidence that the accused committed other crimes [or bad acts] is inadmissible to prove guilt of the crime for which the accused is on trial, even though the other crimes are of the same nature as the one charged in the indictment. Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970). But the exceptions to the general rule are as well established as the rule itself.

Rodriguez v. Commonwealth, 249 Va. 203, 206, 454 S.E.2d 725, 727 (1995).

> "Evidence of other offenses is admitted if it shows the conduct and feeling of the accused toward his victim, if it establishes their prior relations, or if it tends to prove any relevant element of the offense charged. Such evidence is permissible in cases where the motive, intent or knowledge of the accused is involved, or where the evidence is connected with or leads up to the offense for which the accused is on trial."

Scates v. Commonwealth, 262 Va. 757, 761, 553 S.E.2d 756, 758-59 (2001) (quoting

Kirkpatrick, 211 Va. at 272, 176 S.E.2d at 805).

Appellant contends the evidence of his prior assaults upon Fulton was inadmissible. To establish the first-degree murder charge, however, the Commonwealth was required to prove that appellant killed Fulton deliberately and with premeditation. See Code § 18.2-32. Appellant's prior assaults upon Fulton tended to prove appellant's actions were not accidental, contrary to his statement to the police, and that he intended to kill her. Appellant's physical abuse of Fulton was demonstrative of his feeling toward her and their relationship.

Furthermore, the trial court instructed the jury that it could consider the assaults "only as evidence of the Defendant's possible motive, intent, malice, premeditation and/or the absence of accident in connection with the offenses for which he is on trial and for no other purpose." Unless the record proves otherwise, "[j]uries are presumed to follow prompt cautionary instructions regarding the limitations placed upon evidence." Burley v. Commonwealth, 29 Va. App. 140, 147, 510 S.E.2d 265, 269 (1999). See also LeVasseur v. Commonwealth, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983). The record contains no evidence the jury did not follow

- 7 -

the trial court's cautionary instruction. Accordingly, we cannot say the trial court erred in admitting evidence of appellant's prior violent conduct toward Fulton.

The Commonwealth also introduced evidence that, about a week before Fulton's death, appellant possessed a firearm at the home of a friend, Alyse Waller. At trial, Waller was unable to identify that firearm as the murder weapon. However, Waller testified that the only difference between the two weapons related to the presence of a piece of metal at the front end of one of the weapons. Appellant objected to Waller's testimony on grounds of relevance.

On appeal, appellant contends Waller's testimony was inadmissible as evidence of a bad act. Assuming without deciding that appellant's objection at trial was sufficient to preserve the claim he raises on appeal,[3] appellant has failed to establish how his prior possession of a gun is a bad act or a criminal offense. Waller did not testify that appellant handled the gun in an unlawful manner. Nor did the Commonwealth prove that it was unlawful for appellant to possess a firearm. Therefore, we cannot say Waller's testimony constituted inadmissible "bad act" evidence.

### III.

Lastly, appellant contends the trial court erred by admitting four photographs taken by the medical examiner during Fulton's autopsy. These included a photograph the medical examiner took

---

[3] In his motion *in limine*, appellant asserted evidence that he possessed a gun other than the murder weapon was irrelevant and "tend[ed] only to show a criminal propensity, which is a prohibited purpose." But see Irving v. Commonwealth, 15 Va. App. 178, 179, 422 S.E.2d 471, 472-73 (1992) (*en banc*) (equally divided Court found objection on grounds of relevance was insufficient to preserve for appeal "other crimes evidence" argument).

of the fetus, and photographs of the crime scene.[4]  Appellant contends the trial court should have excluded the photographs because they were inflammatory and prejudicial.[5]

> The admission into evidence of photographs of the body of a murder victim is left to the sound discretion of the trial court and will be disturbed only upon a showing of a clear abuse of discretion.  A graphic photograph is admissible so long as it is relevant and accurately portrays the scene of the crime.

Clagett v. Commonwealth, 252 Va. 79, 87, 472 S.E.2d 263, 268 (1996) (citations omitted).  See also Bailey v. Commonwealth, 259 Va. 723, 739, 529 S.E.2d 570, 579 (2000) (finding no abuse of discretion where the challenged crime scene and autopsy photographs "tended to establish the method, maliciousness, and the degree of atrociousness of the crime").

The photographs in this case were relevant to explain the illustrations of Fulton's wounds in the autopsy report, as well as to explain and corroborate the testimony of the medical examiner.  The photographs, exhibiting Fulton's numerous gunshot wounds, tended to prove the killing was intentional, premeditated, and not accidental.  Moreover, it was the Commonwealth's burden to prove that appellant killed Fulton's fetus.  The photograph of the fetus was clearly relevant to prove this element of the offense.  Accordingly, we find no abuse of discretion in the trial court's admission of the photographs.

For the foregoing reasons, we affirm appellant's convictions.

Affirmed.

---

[4] The trial court limited the number of autopsy photographs the Commonwealth could introduce, finding that the prejudicial effect of one such photograph outweighed its probative value.

[5] In his brief, appellant fails to explain how photographs of the crime scene were inflammatory and prejudicial.  Therefore, we do not consider this question.  See Rule 5A:20(e).