COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Annunziata and Clements
Argued at Alexandria, Virginia


ROY LEE SELLERS

                                              OPINION BY
v.    Record No. 1186-02-4          JUDGE ROSEMARIE ANNUNZIATA
                                            AUGUST 5, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    Henry E. Hudson, Judge

          Thomas B. Walsh (Martin, Arif, Petrovich &
          Walsh, on brief), for appellant.

          Stephen R. McCullough, Assistant Attorney
          General (Jerry W. Kilgore, Attorney General,
          on brief), for appellee.


     Roy Lee Sellers was charged with and convicted of

distribution of cocaine, after having been previously convicted

of the same offense, in violation of Code § 18.2-248.  The trial

court denied his motion to suppress a statement he provided to

the police that was admitted into evidence in the course of

trial.  It is from this ruling that Sellers appeals.  We find no

error and affirm.


                      STATEMENT OF FACTS

     On April 19, 2001, at approximately 1:00 a.m., Sergeant

Kenneth Pedigo, working in an undercover capacity in the

narcotics section of the Fairfax County Police, entered an

apartment to make a drug purchase.  Pedigo spoke with Craig S.

Cadwell in the living room of the apartment; Cadwell promised to obtain some crack cocaine for him. Cadwell took $50 from Pedigo and approached Sellers, who was sitting on the floor, watching Pedigo and Cadwell. Sellers and Cadwell had a conversation that Pedigo could not hear, after which Sellers rose, took the money Pedigo had given Cadwell, and walked with Cadwell to a bedroom in the back of the apartment. Pedigo testified that Sellers "seemed normal, coherent and was talking." Pedigo observed neither drugs nor alcohol use and testified that Sellers did not stagger or sway when he walked. Cadwell returned with crack cocaine and handed it to Pedigo. The police then entered the apartment and arrested Sellers. Sergeant Brian Hall, a member of the arrest team, observed Sellers for approximately 30 minutes at the apartment, before bringing him to the police station. Hall testified that Sellers's speech was not slurred and he did not appear intoxicated. At the time of his arrest, Sellers was 48 years old and had been convicted of five prior felonies.

At approximately 3:00 a.m., Detective Randy Shaw questioned Sellers at the police station. He found Sellers seated and handcuffed to a bench in the processing room, asleep. Shaw woke Sellers, removed his handcuffs, and walked him back to the interview room, where a uniformed deputy was also present. Both were unarmed. Sellers had no trouble walking and did not require assistance.

-

Shaw read Sellers a waiver of <u>Miranda</u> rights form and asked if he understood each statement in the form. Sellers said he did. He read the form and initialed each sentence, indicating he understood the statement. Sellers stated that he had obtained a G.E.D. and that he could read and write. In response to questions from Shaw, Sellers answered that he had consumed two beers and had taken "five or six hits of crack" before his arrest. Although Sellers appeared sleepy, Shaw did not detect an odor of alcohol about him and Sellers did not appear intoxicated or unable to understand the questions posed. As the interview began, Sellers spoke in a "low, monotone voice" and closed his eyes. Shaw snapped his fingers to wake him and said "Roy, please wake up. I want you to listen to this and understand this." Sellers awoke and agreed to provide a statement, which Shaw recorded. Sellers's answers were responsive to the questions asked. After Sellers completed making his oral statement, he read the statement back to Shaw, signed it, and advised Shaw that he needed to change a few things. Shaw reviewed the statement again with Sellers, who orally added items to his initial statement. Shaw recorded the changes. Sellers then read and signed the amended statement. Toward the end of the interview, Sellers began to "nod off" and Shaw again snapped his fingers to wake him. The entire interview lasted no more than thirty minutes.

-

ANALYSIS

Sellers contends his confession was involuntary because it was the product of his weakened mental state and that the trial court erred in denying his motion to suppress it. We disagree.

The Commonwealth has the burden to prove, by a preponderance of the evidence, that a defendant's confession was freely and voluntarily given. Wilson v. Commonwealth, 13 Va. App. 549, 554, 413 S.E.2d 655, 658 (1992). The voluntariness of a confession "is a question of law, subject to independent appellate review." Midkiff v. Commonwealth, 250 Va. 262, 268, 462 S.E.2d 112, 116 (1995). This Court is bound, however, by "the trial court's subsidiary factual findings unless those findings are plainly wrong." Wilson, 13 Va. App. at 551, 413 S.E.2d at 656.

In determining whether a statement or a confession was voluntary, the trial court must decide whether the statement was the "product of an essentially free and unconstrained choice by its maker," or whether the maker's will "has been overborne and his capacity for self-determination critically impaired," Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973); see also United States v. Dickerson, 530 U.S. 428, 434 (2000), because of coercive police conduct. Colorado v. Spring, 479 U.S. 564, 574 (1987). In so deciding, the trial court must consider "the totality of all the surrounding circumstances," Colorado v. Connelly, 479 U.S. 157, 164 (1986), including the defendant's

-

age, intelligence, mental and physical condition, background and experience with the criminal justice system, the conduct of the police, and the circumstances of the interview.  Morris v. Commonwealth, 17 Va. App. 575, 579, 439 S.E.2d 867, 870 (1994).

"While mental condition . . . is relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry."  Connelly, 479 U.S. at 165.  Notably, evidence of coercive police activity "is a necessary predicate to the finding that a confession is not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment."  Id. at 167; see also Commonwealth v. Peterson, 15 Va. App. 486, 488, 424 S.E.2d 722, 723 (1992).  "The amount of coercion necessary to trigger the due process clause may be lower if the defendant's ability to withstand the coercion is reduced by intoxication, drugs, or pain, but some level of coercive police activity must occur before a statement or confession can be said to be involuntary."  Peterson, 15 Va. App. at 488, 424 S.E.2d at 723.

In United States v. Cristobal, 293 F.3d 134 (4th Cir. 2003), the Fourth Circuit Court of Appeals likened the Miranda waiver inquiry to that conducted to determine the voluntariness of a confession.  The Court of Appeals stated, "A deficient mental condition, whether the result of a pre-existing mental illness or, for example, pain killing narcotics administered

-

after emergency treatment, is not, without more, enough to render a waiver involuntary." Id. at 141. Thus, statements made during a custodial interrogation and while intoxicated are not per se involuntary or inadmissible. Boggs v. Commonwealth, 229 Va. 501, 512, 331 S.E.2d 407, 415-16 (1985) (citation omitted).

On appeal, we review the evidence and all reasonable inferences fairly deducible therefrom, in the light most favorable to the party prevailing below, in this case, the Commonwealth. See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). Reviewing the circumstances surrounding the police interrogation of Sellers as established by the evidence viewed in the light most favorable to the Commonwealth, we find that Sellers's statement was voluntarily given and that his Fifth Amendment rights were not violated. Sellers was 48 years old and had extensive experience with the criminal justice system, having been convicted of five prior felonies. He had a G.E.D and could read and write. When the police met him at 1:00 a.m. at the apartment, his speech was clear and he appeared coherent. He spoke to Cadwell with no sign of incoherence, completed the drug transaction, and walked away without swaying or staggering.

At 3:00 a.m., when he was questioned at the police station, Sellers continued to have no difficulty walking or speaking clearly. Although he claimed to have consumed "two beers" and

-

taken "six hits of crack cocaine" prior to his arrest that evening, he did not appear intoxicated. He did not smell of alcohol, and he was responsive to the questions posed to him. The trial court found that Sellers was lucid at the time of the confession and that he waived his Miranda rights, noting, in particular, Sellers's conduct in initialing each paragraph of the waiver of rights form, reviewing the written account of his statement, making the changes he felt were necessary, and then signing both the original and amended portions of the statement. Thus, we cannot conclude that the trial judge's findings are plainly wrong. He had the opportunity to see and hear that evidence as it was presented, Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) (citations omitted), and determining the weight and credibility of the witnesses was within his province alone. Id. In short, Sellers's claim that he was intoxicated and too sleepy to understand the proceedings is belied by the record.

Sellers cites Peterson in support of his argument that his confession should be suppressed. In Peterson, the defendant sustained injuries in an automobile accident. Peterson, 15 Va. App. at 488, 424 S.E.2d at 423. Police questioned him in an ambulance, on the way to the hospital. The evidence showed that Peterson had ingested cocaine, had blurred vision and could not understand "everything that was going on around" him. He also experienced problems in breathing, suffered from chest pains,

-

and was connected to a heart monitor.  The trial court

suppressed Peterson's statement, and this Court affirmed,

finding that the "evidence was credible and supported the trial

court's finding that the police authority, asserted when the

defendant was especially susceptible, overbore his will and,

thus, was coercive police activity rendering his statements

involuntary and inadmissible."  Id.

Peterson is distinguishable from the case at bar.

Reviewing the totality of the circumstances attending his

confession, we find that Sellers's contention that his statement

was the involuntary product of his disabled mental state is

without merit.  Sellers bore no symptoms of intoxication; he

walked without difficulty and was lucid.  Although he was

sleepy, he did not suffer the serious and debilitating physical

problems that Peterson was suffering as he answered police

questions en route to a hospital in an ambulance.[1]  See generally

Cristobal, 293 F.3d at 141 (finding the defendant's waiver of

---

[1] The facts in this case are more analogous to those in
Boggs, 229 Va. 501, 331 S.E.2d 407.  In Boggs, the defendant
argued that his confession was involuntary on the grounds that
he had consumed "a six pack of beer," shared "a fifth of
whiskey" with two friends, smoked marijuana and "ate two hits of
speed [amphetamines]."  A breathalyzer test showed that he had a
blood-alcohol content of 0.22%.  Id. at 511, 331 S.E.2d at 415.
In contrast to the inferences Boggs sought to have the court
draw, the officer testified that before Boggs was pulled over,
he was driving "all right; fast, but all right"; his gait was
"not unusual," his speech was clear and he did not act like he
was intoxicated.  Id.  The Supreme Court of Virginia upheld the
trial court's conclusion that Boggs's statement, given six hours
later, was voluntary.  Id. at 512, 331 S.E.2d at 416.

-

his *Miranda* rights was voluntary, despite his use of pain killers, and that police did not exploit defendant's weakened state); *Stockton v. Commonwealth*, 227 Va. 124, 140, 314 S.E.2d 371, 381 (1984) (finding that antidepressants and tranquilizers taken in large doses did not render the confession involuntary, where the defendant never appeared to be under the influence of drugs, appeared to know what he was doing, and had no difficulty understanding the police questions); *Goodwin v. Commonwealth*, 3 Va. App. 249, 254, 349 S.E.2d 164 (1986) (finding that a mildly retarded defendant's statement was voluntary, despite the odor of alcohol about him, where he told police he was not drunk, appeared in control, answered questions coherently and was able to make changes to his written statement).

Moreover, an examination of police actions in eliciting the confession, in their totality, fails to support Sellers's contention that his statement was coerced, in violation of his Fifth Amendment rights. He was not handcuffed during the brief, 30-minute interrogation. Neither Detective Shaw nor the other officer who was present carried firearms. Shaw did not harm or threaten to harm Sellers in any way if he did not answer their questions, or if he refused to sign the statement or its amendment. *Compare* *Beecher v. Alabama*, 389 U.S. 35, 36 (1967) (statement obtained after police held a gun to suspect's head); *Payne v. Arkansas*, 356 U.S. 560, 564-65 (1958) (statement obtained after police threatened to turn suspect over to an

-

angry mob); Brown v. Mississippi, 297 U.S. 278, 281-82 (1936) (statement obtained after police whipped suspect). The officers did not deprive Sellers of basic necessities. Compare Malinski v. New York, 324 U.S. 401, 403, 406-07 (1945) (statement obtained after forcing suspect to remain naked); Brooks v. Florida, 389 U.S. 413, 414-15 (1967) (statement obtained after depriving suspect of food and water). They did not confront him with unrelenting questioning; indeed the interview was completed in thirty minutes. Compare Ashcraft v. Tennessee, 322 U.S. 143, 154 (1944) (statement obtained after interrogating suspect continuously for 36 hours); Davis v. North Carolina, 384 U.S. 737, 752 (1966) (statement obtained after isolating suspect for several weeks). Sellers's responses to questioning were not the product of deception or confusion. Spano v. New York, 360 U.S. 315, 323 (1959) (statement obtained after suspect erroneously told that a friend, who had three children and a pregnant wife, would lose his job); Leyra v. Denno, 347 U.S. 556, 559-61 (1954) (statement obtained after hours with psychiatrist trained in hypnosis, although suspect erroneously told that doctor was a general practitioner). In short, the coercive police conduct which the law requires as the "necessary predicate to the finding that a confession is not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment," Connelly, 479 U.S. at 167, was not established in this case.

For the foregoing reasons, we affirm the decision of the trial court.

<u>Affirmed.</u>