COURT OF APPEALS OF VIRGINIA

Present: Judges Annunziata, Clements and Kelsey
Argued at Salem, Virginia


ROGER DEAN POINDEXTER

v.  Record No. 1128-02-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE ROSEMARIE ANNUNZIATA
OCTOBER 7, 2003


FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
George E. Honts, III, Judge

Christopher K. Kowalczuk for appellant.

Paul C. Galanides, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Roger Dean Poindexter appeals his conviction for the possession of methamphetamine with intent to distribute, in violation of Code § 18.2-248. He contends on appeal that the trial court erred in denying his motion to suppress his confession. For the reasons that follow, we affirm.

On appeal, we review the evidence, and all reasonable inferences fairly deducible therefrom, in the light most favorable to the party prevailing below, in this case, the Commonwealth. See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). So viewed, the evidence establishes that, on September 10, 2000 at approximately 10:00 p.m., a motorist telephoned the Botetourt County Sheriff's Department and reported that another motorist was driving erratically.

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Deputy K.S. McClure received the information and traveled to the location of the car. He observed Poindexter sitting behind the wheel of a Jeep in the middle of a field, approximately thirty or fifty yards off the road. Based on tire tracks near the car, McClure concluded that the car had "gone through a ditch" that runs parallel to the road. He testified that the car "looked out of place."

Deputy McClure approached the vehicle and asked Poindexter, the driver of the vehicle, for his license and registration. Poindexter handed the officer credit cards several times before finally retrieving his license from his wallet. McClure noted that Poindexter's eyes were constricted, that he looked pale, that he had poor hand-eye coordination, and that he had a short attention span.

McClure ordered Poindexter out of the car and began to administer field sobriety tests. McClure first asked Poindexter to recite the alphabet from E through U "without singing the little song that all of us" know. McClure had to explain the test four times because Poindexter continuously interrupted him with nonsensical mumbling and babbling. Poindexter finally began the test, starting with the letter E and proceeding directly to U, then V, W, X, Y, and Z.

For the second test, McClure asked Poindexter to count backwards from thirty-nine to zero. McClure had to explain this test three times. Poindexter began the test by noting that "thirty-nine cars were in the Vinton Motor lot which leaves about two or three." Poindexter tried again, starting with thirty-nine, proceeding backwards to thirty-one but skipping thirty-five, and then reciting forty, forty-one, and forty again.

Poindexter failed the third test as well. McClure explained that, on his command, he wanted Poindexter to touch the tip of his nose with the tip of his finger while tilting his head back and keeping his eyes closed. McClure told Poindexter to touch his nose using his right hand. Poindexter used his left. McClure next instructed Poindexter to touch his nose using his

left hand. Poindexter used his right. McClure gave several more commands, and Poindexter used the wrong hand each time.

McClure administered a breathalyzer test which revealed a .000 blood alcohol level. Believing Poindexter was under the influence of an intoxicant other than alcohol, McClure placed him under arrest for driving under the influence of drugs. McClure secured Poindexter in the back of his patrol car.

McClure and a partner then searched the Jeep. Inside, they found a small box that contained a small plastic bag. The plastic bag held a granulated substance. Subsequent analysis revealed the substance was 22.7 grams of crystal methamphetamine.

McClure returned to the patrol car and read Poindexter the Miranda warnings. McClure asked Poindexter if he understood his rights, and Poindexter answered "yes." McClure also asked Poindexter if, "having these rights in mind, do you wish to make, do you wish to talk to us now?" Poindexter replied, "Yeah, I'll do anything I just can't go back to jail with my back."

McClure proceeded to ask Poindexter three questions. First, McClure asked, "Whose dope is in the box?" Poindexter answered, "What dope? No, it's not mine, I'm not sure. Actually I'm taking it to Bobby Thornhill on Field's Avenue for Tim from over on Ninth Street." Second, McClure asked Poindexter if he had "snorted any of this?" Poindexter replied, "Well, I've had about a quarter of a gram of it today." Third, McClure asked Poindexter if he bought the substance. Poindexter responded, "No, I'm just taking it to Bobby Thornhill over in Blue Ridge for Tim." No further questions were asked.

McClure testified that Poindexter's demeanor changed after placing him under arrest. "He became lucid," according to McClure. Poindexter answered his questions "very quickly" and "there wasn't the same hesitation, the same degree of thought put into them as . . . before." McClure did not have to repeat his questions, nor did he have to repeat the Miranda warnings.

Before trial, Poindexter moved to suppress the introduction of his statements to the police. He argued that, given his impaired mental state, he did not knowingly, intelligently, or voluntarily waive his Miranda rights. The trial court denied the motion.

Analysis

To admit incriminating statements given during a custodial interrogation, "the Commonwealth must show that the accused was apprised of his right to remain silent and that he knowingly, intelligently, and voluntarily waived that right." Green v. Commonwealth, 27 Va. App. 646, 652, 500 S.E.2d 835, 838 (1998). "The [trial] court must decide whether the defendant knowingly and intelligently relinquished and abandoned his rights. The court's determination is a question of fact based upon the totality of the circumstances that will not be disturbed on appeal unless plainly wrong." Watkins v. Commonwealth, 229 Va. 469, 477, 331 S.E.2d 422, 429-30 (1985) (citations omitted); see also Harrison v. Commonwealth, 244 Va. 576, 581, 423 S.E.2d 160, 163 (1992).

The voluntariness of the defendant's waiver is subject to the same analysis as the voluntariness of statements under the Due Process Clause. United States v. Cristobal, 293 F.3d 134, 140 (4th Cir. 2002); see also Colorado v. Connelly, 479 U.S. 157, 169-70 (1986) (stating that "[t]here is obviously no reason to require more in the way of a 'voluntariness' inquiry in the Miranda waiver context than in the Fourteenth Amendment confession context"). Under this analysis, voluntariness is a question of law which we review *de novo*. See Midkiff v. Commonwealth, 250 Va. 262, 268-69, 462 S.E.2d 112, 116 (1995). This Court is bound, however, by "the trial court's subsidiary factual findings unless those findings are plainly wrong." Wilson v. Commonwealth, 13 Va. App. 549, 551, 413 S.E.2d 655, 656 (1992); Sellers v. Commonwealth, 41 Va. App. 268, 272, 584 S.E.2d 452, 455 (2003). Evidence of coercive police activity "is a necessary predicate to the finding that a confession is not voluntary within

the meaning of the Due Process Clause of the Fourteenth Amendment." Connelly, 479 U.S. at 167; see also Commonwealth v. Peterson, 15 Va. App. 486, 488, 424 S.E.2d 722, 723 (1992). "The amount of coercion necessary to trigger the due process clause may be lower if the defendant's ability to withstand the coercion is reduced by intoxication, drugs, or pain, but some level of coercive police activity must occur before a statement or confession can be said to be involuntary." Peterson, 15 Va. App. at 488, 424 S.E.2d at 723. Thus, statements made during a custodial interrogation and while intoxicated are not *per se* involuntary or inadmissible. Boggs v. Commonwealth, 229 Va. 501, 512, 331 S.E.2d 407, 415-16 (1985) (citation omitted).

Applying these principles to the case at bar, we find that Poindexter knowingly, intelligently, and voluntarily waived his Miranda rights and that the trial court properly denied his motion to suppress incriminating statements he made to the police.

Deputy McClure testified that Poindexter's behavior clearly improved upon his arrest, that he was "lucid," and that he answered questions regarding his Miranda rights quickly and without hesitation. When the officer read Poindexter his rights, he expressly stated that he understood them before he answered any questions. Poindexter then composed thoughtful, complete sentences in response to McClure's questions about the methamphetamine. McClure further testified that Poindexter acted rationally and was "[v]ery able and capable of answering any questions" when he was taken to have his blood drawn and to be presented before a magistrate. Also, when McClure explained the arrest and booking process, Poindexter stated he understood.

Notwithstanding Poindexter's failure to properly perform the field sobriety tests administered shortly after the police stopped his vehicle, Poindexter gave the necessary attention to the tests, listened to a set of rights pertaining to those tests, stated he understood the rights, and elected to take the tests.

- 5 -

At the time of his arrest, Poindexter was 42 years old, had a high school education and had attended one year of college. He had been convicted of several felony and driving offenses and was, therefore, familiar with police encounters.

Accordingly, the trial court made the following findings of fact:

> Arrest appears to have had a remarkably sobering effect on the defendant. The *unchallenged testimony* of the deputy is that there was a marked change in his ability to comprehend what was going on once he was arrested . . . his responses then became lucid and to the point and were responsive to the questions asked . . . . [T]his defendant gives every indication of understanding what he was doing once the warnings were given to him.

(Emphasis added).

Under a totality of the circumstances test and viewing the evidence in the light most favorable to the Commonwealth, we cannot say that the trial court's decision was plainly wrong. The record supports the trial court's finding that Poindexter was lucid and able to understand the procedures followed when the police presented and questioned him about his rights under Miranda. Thus, we hold that Poindexter knowingly and intelligently waived his rights. These same facts also support the finding that Poindexter's mental condition was consistent with a voluntary waiver. Finally, Poindexter's assertion that his waiver was involuntary due to police intimidation or coercion is procedurally barred under Rule 5A:18 because he failed to present this argument to the trial court. See Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998) (stating "this Court will not consider an argument on appeal which was not presented to the trial court").

We affirm the trial court's decision.

Affirmed.