# CIRCUIT COURT OF AUGUSTA COUNTY

Commonwealth of Virginia

v.

Timothy Wilkins

April 19, 2010

Case No. CR09000388-00

By Judge Victor V. Ludwig

This matter comes before the Court on the Defendant's Motion to Suppress Confession. Defendant, Timothy Wilkins, moves the Court to exclude from evidence at trial any statements made by him at the time of his apprehension and arrest. Specifically, Wilkins seeks to exclude *post-Miranda* statements which he made during video-recorded questioning following his arrest on the grounds that the statements were not voluntarily made. On April 16, 2010, the Court heard arguments on the matter and viewed the taped statements at issue. After carefully considering the Defendant's Motion, the Commonwealth's brief in opposition, and the evidence and arguments presented at the hearing, the Court denies the Motion.

*Facts*

On June 12, 2009, Augusta County Sheriff's deputies responded to a report of a man acting suspiciously in a parking lot in Verona, Virginia. One of the responding deputies knew the man to be Wilkins and knew that he had been issued a permit to carry a concealed weapon. When the deputy inquired of Wilkins whether he was armed, Wilkins motioned to the rear of his vehicle and ultimately gave consent to the deputy (and another deputy

who had had arrived) to open the vehicle door. Having done so, the deputies discovered the body of a dead woman covered with a tarp. The deputies immediately placed Wilkins in investigative detention and advised him of his *Miranda* rights. The deputies then transported Wilkins to the August County Sheriff's Office, where he was questioned by Sheriff's investigators. In the course of this questioning, Wilkins confessed to the murder of the woman found in his vehicle, whom he identified as his girlfriend, Misty Phillips.

*Analysis*

Even when a suspect has been advised of rights as required by *Miranda v. Arizona*, 384 U.S. 436, 475-76 (1966), his statements are inadmissible if made involuntarily. *See Mincey v. Arizona*, 437 U.S. 385, 402 (1978); *see also Miller v. Fenton*, 474 U.S. 104, 110 (1985). The burden rests with the Commonwealth to prove, by a preponderance of the evidence, that Wilkins's statements were given freely and voluntarily. *See Wilson v. Commonwealth*, 13 Va. App. 549, 554 (1992).

The principal evidence offered by the Commonwealth is the video tape of the disputed statements. In some respects, the tape of the interview indicates that Wilkins may have suffered some degree of impairment. For example, at times, he requested that the interviewers repeat questions, he was confused about the details of his arrest, and occasionally he had trouble answering clearly. For instance, Wilkins was unclear where he was initially arrested, ultimately concluding that they had apprehended him in the parking lot of Wal-Mart, though he was actually apprehended in the parking lot of the Food Lion in Verona. Some of his responses were inaudible or unintelligible, but that could as easily have been a result of the quality of the recording, the fact that Wilkins simply mumbled some of his responses, or the understandable probability that, under the circumstances, he sometimes began speaking without having fully formulated in his mind how most clearly to express himself.

However, the Commonwealth need not prove that Wilkins was not impaired to any degree (however minimal) at the time of the statements. *Yarborough v. Commonwealth*, 217 Va. 971, 974 (1977) ("Statements made during a custodial interrogation and while intoxicated are not *per se* involuntary or inadmissible."). The test is whether the defendant's "will was overborne" or whether the statements were the "product of a rational intellect and a free will." *Id.* (quoting *Townsend v. Sain*, 372 U.S. 293, 307 (1963)). "In determining whether an accused's will has been overborne, courts assess 'the totality of all the surrounding circumstances'." *Stockton v. Commonwealth*, 227 Va. 124, 140 (1984) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)). This includes the defendant's

background, experience, mental and physical condition, and the conduct of the police. *Commonwealth v. Peterson*, 15 Va. App. 486, 488 (1992).

In spite of some ambiguous suggestions of impairment, the recording on the whole indicates that Wilkins was not so impaired as to preclude a voluntary confession. On the contrary, Wilkins was cogent and cooperative with the deputies, and he was able to recall the circumstances regarding Ms. Phillips's death in considerable detail, in spite of the fact that, by his own admission, he was intoxicated when the incident occurred. For instance, he recalled the approximate time that he killed Ms. Phillips; he recalled what the two had been doing at that time; he recalled with some precision where the incident took place; and he recalled in some detail how he killed Ms. Phillips. Wilkins also recalled other facts not related to the incident, such as names and addresses (although his recall was not total in that respect). He expressed regret for his actions, and he attempted to excuse or explain what he had done by stating that he was "a mean drunk" and asserting that he suffered from bipolar disorder. Furthermore, other than an instance of his being unsteady on his feet (which could have been caused by the close quarters of the interrogation room), Wilkins showed little or no sign of physical impairment.

Thus, while his *manner* of speech during the interview suggests the possibility that he was under the influence of some drug or intoxicant, Wilkins's physical dexterity and the substance of his responses indicate that he was not so impaired that the confession was involuntary. A suspect questioned after law enforcement authorities discover his deceased girlfriend in the back of his car is likely to be nervous, tired, overwrought, depressed, filled with remorse, or frightened. These conditions may manifest themselves as signs of impairment. But in this case, although there were some arguable indicia of impairment, Wilkins was able to comport himself physically and provide considerable detail about the incident in question, and the totality of the circumstances indicates that he spoke voluntarily and with rational understanding.

The recording also indicates that the conduct of the investigators who conducted the interview did not rise to the level of being coercive and defeating Wilkins's free will. "Evidence of coercive police activity 'is a necessary predicate to the finding that a confession is not voluntary.'. . ." *Commonwealth v. Peterson*, 15 Va. App. 486, 488 (1992) (quoting *Colorado v. Connelly*, 479 U.S. 157, 164 (1986)). Thus, even if the defendant's "ability to withstand the coercion is reduced by intoxication, *some* level of coercive police activity must occur before a statement or confession can be said to be involuntary." *Id.* (emphasis added).

It has been said that "custodial interrogation is . . . inherently coercive." See e.g., *Johnson v. Trigg*, 28 F.3d 639, 641 (7th Cir. 1994). But the coercive effect inherent in a custodial interview cannot, by itself, render the resulting statements involuntary. "[O]ne possible definition

of a confession inadmissible because coerced would be that it had been extracted in circumstances that cast serious doubt on its reliability. . . . But modern courts go further and suppress, in the name of due process, even reliable confessions when the police have resorted to tactics thought likely to prevent the suspect from making a rational choice whether to confess or remain silent." *Id.* (citing *Rogers v. Richmond*, 365 U.S. 534 (1961)).

No such tactics are present in this case. Based on the evidence before the Court, the level of coercion was, at most, minimal, and it neither prevented Wilkins from making a rational choice nor rendered Wilkins' statements involuntary. Wilkins was not bound or handcuffed during the interview; the interviewers were remarkably courteous and respectful; Wilkins was not threatened or in any way mistreated; the interview appeared to last approximately an hour; Wilkins was given an opportunity to take a break; and the interviewers never attempted to deceive him. Unquestionably, the investigators used tactics designed to elicit information from Wilkins, but, at the outset, the tenor of the questions did not necessarily evince an intent to develop incriminating information. For instance, the interviewers did not accuse Wilkins of murdering Ms. Phillips in an effort to intimidate him into a confession; rather, their first substantive question was "What happened tonight? Or today? What's going on?" Having said that he and his girlfriend had been drinking, Wilkins then confessed, unasked, to killing Ms. Phillips. Indeed, when Wilkins made that remark, the investigators had not even asked directly how the woman had died or whether he had caused her death. After Wilkins had admitted responsibility for Ms. Phillips death, subsequent questions became more pointed and designed to elicit information about why, how, when, and where Ms. Phillips was killed, but even those questions appeared calculated more to obtain or verify information than to deceive, threaten, or intimidate Wilkins. Given Wilkins apparent physical and mental condition, the Court finds that the police conduct during the interview fell far short of the level of coercion required to find his statements to be involuntary.

This finding is consistent with decisions of the Supreme Court of Virginia and the Court of Appeals of Virginia. In *Yarborough v. Commonwealth*, 217 Va. 971 (1977), the Court upheld the admissibility of self-incriminating statements in spite of some evidence that the defendant was intoxicated at the time of questioning. According to the investigating officers, the defendant's mannerisms and speech indicated that she was intoxicated at the scene, the officers smelled liquor on the defendant's person and testified that the defendant staggered and was "constantly weeping." *Id.* at 974. In spite of this evidence, the Court determined that "the evidence fully supports the trial court's ruling that defendant made a knowing and intelligent waiver of her *Miranda* rights and that the statements were voluntary." *Id.*

24

Similarly, in *Boggs v. Commonwealth*, 229 Va. 501 (1985), Boggs challenged the voluntariness of his confession on the grounds that he was intoxicated. He testified that he had consumed "a six pack of beer, shared a fifth of whiskey with two friends, smoked marijuana, and ate two hits of speed [amphetamines]." *Id.* at 511. Additionally, "a breathalyzer test showed that Boggs had a blood-alcohol content of 0.22 percent." *Id.* The trial court determined that the Boggs's will was not overborne, based on police testimony that "while Boggs smelled of alcohol and 'his eyes were bloodshot, his face was flushed,' his speech 'did not appear to be slurred,' his walk was 'normal, as if he was sober'." *Id.* The Supreme Court, finding that the trial court was not "plainly wrong" in allowing the statements, affirmed the trial court.

In *Sellers v. Commonwealth*, 41 Va. App. 268 (2003), the Court of Appeals sustained the trial court's denial of the defendant's motion to suppress self-incriminatory statements. Though some evidence indicated that the defendant was under the influence of intoxicants, the Court determined that the defendant had "no difficulty walking or speaking clearly," "was responsive to the questions posed to him," and "did not appear intoxicated." *Id.* at 274.

Wilkins relies primarily on *Commonwealth v. Peterson*, 15 Va. App. 486 (1992). In *Peterson*, the defendant sustained injuries in a car accident, and the police questioned the defendant in the ambulance en route to the hospital. The trial court excluded Peterson's statements, and the Virginia Court of Appeals affirmed. *Id.* at 488. But *Peterson* is distinguishable. Peterson suffered from "serious and debilitating physical problems" during his questioning. *Sellers*, 41 Va. App. at 275. He "had blurred vision and could not understand 'everything that was going on around' him. He also experienced problems in breathing, suffered from chest pains, and was connected to a heart monitor." *Id.* All of that rendered Peterson "especially susceptible, overbore his will and, thus, was coercive police activity rendering his statements involuntary and inadmissible." *Peterson* at 489.

None of the circumstances sustaining the suppression of the statements in *Peterson* are present in this case. Indeed, no evidence indicates irrefutably that Wilkins was intoxicated or otherwise functioning under any significant impairment during the questioning. The only evidence of Wilkins' having been impaired during the interrogation must be predicated on conclusions drawn from an observation of his conduct as shown on the tape. Yet even those aspects of his behavior which may support an argument that he was suffering from some mental or chemical impairment can be as easily attributable to the circumstances which led to his interrogation (his having been arrested in a parking lot with a dead body in the back of his automobile and the incidents of the preceding days). While the burden of those circumstances might have been troubling for Wilkins, there is no persuasive evidence that they impaired his judgment, overbore his free will,

or compelled him to give statements that were not the product of a rational intellect.

This case is much more similar factually to *Sellers*, and therefore the Court finds that Wilkins's statements to police during the custodial interview were voluntary and that his will was not overborne.

Because the evidence presented by the Commonwealth satisfies the Court that Wilkins's statements were voluntary, the Defendant's Motion to Suppress is denied.